[Civil No. 2176.   Filed December 10, 1924.]

[230 Pac. 1106.]

JOSEPHINE WEITZEL, Plaintiff and Appellant, v. HARRY E. WEITZEL, Defendant, and SOUTHERN PACIFIC RAILROAD COMPANY OF MEXICO, a Corporation, Garnishee and Appellee.

1. COURTS — FOREIGN RAILROAD CORPORATION HELD SUBJECT TO ARIZONA COURTS.—Foreign corporation operating railroad exclusively in Republic of Mexico, but maintaining offices in Arizona where were located most of its principal officers, and which maintained a permanent bank account in Arizona out of which it paid employees and some current bills, *held* subject to Arizona courts.

––––––

1. Jurisdiction over foreign corporations, see note in 85 Am. St. Rep. 905. See, also, 12 R. C. L. 108.

2. GARNISHMENT — IF DEBT OF GARNISHEE IS NOT WITHIN COURT'S JURISDICTION, IT CANNOT BE APPROPRIATED TO PAYMENT OF PLAINTIFF'S CLAIM.—Though garnishee is within jurisdiction of court, if its debt to defendant is not also within that jurisdiction it cannot be legally appropriated to payment of plaintiff's judgment.

3. GARNISHMENT—DEBT, THOUGH FOR WAGES EARNED AND PAYABLE IN MEXICO, HELD SUBJECT TO GARNISHMENT IN ARIZONA.—Where judgment creditor and garnishee were within jurisdiction of Arizona courts and judgment debtor entitled to sue garnishee on his claim in Arizona, *held*, though debt was for wages earned and payable in Mexico, it was subject to garnishment in Arizona, provided payment in such manner would be recognized by Mexican courts.

4. GARNISHMENT—GARNISHEE'S PAYMENT OF JUDGMENT AGAINST IT IS BAR TO JUDGMENT DEBTOR'S ACTION IN ANOTHER STATE.—Under full-faith and credit clause of federal Constitution, garnishee's payment of judgment entered against it in one state is a bar to action on its debt in another state.

5. GARNISHMENT — ARIZONA CREDITOR HELD NOT ENTITLED TO GARNISHEE DEBT EARNED AND PAYABLE IN MEXICO WHICH MIGHT BE THERE AGAIN ENFORCED. — Arizona creditor *held* not entitled to garnishee in Arizona debt earned and payable in Mexico, since Mexican courts were under no obligation to recognize any payment made by garnishee and judgment debtor might in such courts enforce a second payment.

See (1) 14A **C. J.**, pp. 1374, . 1375.   (2) 28 **C. J.**, p. 193.   (3, 5) 28 **C. J.**, p. 194 (1926 Anno.).   (4) 28 **C. J.**, p. 406.

APPEAL from a judgment of the Superior Court of the County of Pima. Kirk T. Moore, Judge. Affirmed.

Mr. Charles Blenman, for Appellant.

Mr. C. J. Hellerstedt, Mr. G. O. Hilzinger and Mr. Charles L. Rawlins, for Appellee.

2. Where debt garnishable, see notes in Ann. Cas. 1913D, 803; 19 L. R. A. 577; 67 L. R. A. 209; 3 L. R. A. (N. S.) 608; 20 L. R. A. (N. S.) 264; L. R. A. 1915F, 880.

Jurisdiction to garnish debt due from foreign corporation doing business within state to nonresident arising from business outside state, see note in 27 A. L. R. 1396. See, also, 12 R. C. L. 819.

" ROSS, J.—Josephine Weitzel, the appellant, sued out a writ of garnishment in the superior court of Pima county, Arizona, against the Southern Pacific Railroad Company of Mexico, in an effort to reach a debt the railroad company owed Harry E. Weitzel on account of wages earned in Mexico, and apply it on a judgment for alimony obtained by her against Harry E. Weitzel in said superior court, in an action in which he was personally served and defended.

·The Southern Pacific Railroad Company of Mexico in its verified answer to the writ admitted that Harry E. Weitzel was employed and was working for it in the Republic of Mexico and that it owed him at the date of answering 619 pesos, Mexican money, but claimed that such debt was not subject to garnishment because it was for wages earned and payable in Mexico. It claimed the *situs* of such debt was in Mexico and not in Arizona. Finally, it claimed that the Mexican courts would not recognize the forced payment in Arizona as satisfaction of the debt, but would make it pay the claim in Mexico, notwithstanding its payment in Arizona.

The trial court took the view of the garnishee and entered judgment dismissing the· writ, and it is from such judgment that Josephine Weitzel appeals.

The garnishee also claims that being a foreign corporation, operating a railroad located exclusively in the Republic of Mexico, it is exempt from being sued in the courts of Arizona. However, the record shows that it has offices in Tucson, Pima county, Arizona, where are located most of its principal officers and where a force of employees are engaged in working for it; that it has a permanent bank account in the Consolidated National Bank of Tucson out of which it pays its local employees and officers and also some of its current bills. Thus it is seen

the garnishee's business in Arizona is not only considerable in amount but of a permanent and continuous nature. As was said in *Tauza* v. *Susquehanna Coal Co.,* 220 N. Y. 259, 115 N. E. 915, speaking of the *situs* of a corporation for the purposes of service of process:

"If in fact it is here, if it is here, not occasionally or casually, but with a fair measure of permanence and continuity, then, whether its business is interstate or local, it is within the jurisdiction of our courts."

See, also, *International Text-Book Co.* v. *Tone,* 220 N. Y. 313, 115 N. E. 914; *Atkinson* v. *United States Operating Co.,* 129 Minn. 232, L. R. A. 1916E, 241, 152 N. W. 410.

That the garnishee had submitted itself to the jurisdiction of our courts, so far as debts and liabilities incurred in Arizona are concerned, is certain. It was in the state doing and carrying on business therein, receiving the state's protection and acknowledging its sovereignty over it, and we think generally subject to its processes.

This brings us to the question of the *situs* of the debt. Even though the garnishee is in the jurisdiction, if the debt be not also in our jurisdiction it cannot be legally appropriated to the payment of plaintiff's judgment. The court must have jurisdiction of the debt garnished. The attitude of the courts on the much vexed question as to the locality of choses in action for purposes of garnishment is well stated in *Harvey* v. *Thompson,* 128 Ga. 147, 119 Am. St. Rep. 373, 9 L. R. A. (N. S.) 765, 57 S. E. 104, as follows:

"The question as to where is the *situs* of intangible property, such as choses in action, for the purpose of attachment and garnishment, is one that has been the subject of numerous decisions. The conflict of opinion on the subject is distressing and

hopeless. In some cases it is held that the situs, for the purpose of garnishment proceedings, is the domicile of the principal defendant, in others that it is the domicile of the garnishee, and still others that it is the domicile of the debtor or wherever he may be found and sued. 20 Cyc. 1036; Brown on Jurisdiction, 2d ed., § 150.''

.The rule best adapted to the efficient employment of the writ of garnishment, for the purpose it was evidently intended—to aid the creditor in collecting his debt—is, we think, the one adopted by the federal Supreme Court in *Harris* v. *Balk,* 198 U. S. 215, 3 Ann. Cas. 1084, 49 L. Ed. 1023, 25 Sup. Ct. Rep. 625 (see, also, Rose's U. S. Notes), wherein it is stated:

''Attachment is the creature of the local law; that is, unless there is a law of the state providing for and permitting the attachment it cannot be levied there. If there be a law of the state providing for the attachment of the debt, then if the garnishee be found in that state, and process be personally served upon him therein, we think the court thereby acquires jurisdiction over him, and can garnish the debt due from him to the debtor of the plaintiff and condemn it, provided the garnishee could himself be sued by his creditor in that state.''

When we were yet a territory, the predecessor of this court, in *National Fire Insurance Co.* v. *Ming,* 7 Ariz. 6, 60 Pac. 720, following, as it was bound to do, an earlier Supreme Court decision, said:

''The *situs* of a debt for purposes of garnishment has, however, been a vexed question, and has been variously answered. Some courts hold that the *situs* of a debt is at the residence of the creditor; others, that it is at the residence of the debtor; and ·till others, that it is wherever it is payable. In the case of *Railroad Co.* v. *Sturm,* 174 U. S. 710, 43 L. Ed. 1144, 19 Sup. Ct. Rep. 797, the Supreme Court has settled the question for this court by deciding that the *situs* of a debt for purposes of attachment

and garnishment, following the policy of the law which protects home creditors through administration proceedings, is at the domicile of the debtor, or wherever the latter may be found and sued by the creditor.''

The facts in the Ming case were: Ming, a resident of Arizona, insured with the National Fire Insurance Company, a Connecticut corporation, his property in Arizona. The policy of insurance was issued by the company's agency in California, where it had qualified to solicit insurance. The property having been destroyed by fire and the insurance company failing to pay the insurance, suit was brought by Ming in the courts of Arizona. The insurance company answered that it had been sued in the California courts by Ming's creditors resident therein and garnished and had paid out said insurance in satisfaction of judgments obtained against it in California by such creditors. Now, although the contract of insurance was made and payable in Arizona, where Ming, the creditor, resided, for the purposes of the garnishment proceedings the *situs* of the debt was held to be in California where his creditors resided and where the insurance company had general offices and did business, although a resident of the state of Connecticut. In the Ming case neither the garnishee nor the garnishment creditors were residents of Arizona. In the present case both the judgment creditor and judgment debtor at the time of entry of judgment were residents of Arizona, and at the time of garnishment both the judgment creditor and garnishee were either residents or in the jurisdiction of the court. It was held in the Ming case that Ming could have sued the insurance company in California even though it was a foreign corporation and he a nonresident, and acquired jurisdiction of the subject matter by attachment or garnishment proceedings, since it was shown the insurance company had property and effects in

the state of California. And for that reason his California creditors could maintain the garnishment in California.

So we think in this case defendant Harry E. Weitzel, although his debt was for wages earned and payable in Mexico, could maintain a suit in the courts of Arizona against the Southern Pacific Company of Mexico, and, because of its being in Arizona and having property and effects therein, could secure personal service and a judgment *in personam* against it for the amount it owed defendant. That being so, under the rule in the Ming case, and the rule in the United States courts (*Bingenheimer Mercantile Co.* v. *Weber* (N. D.), 27 A. L. R. 1392, and annotation, p. 1396 et seq., 191 N. W. 620), Josephine Weitzel was entitled to judgment, unless the fact that such judgment when paid would not be an acquittance in the courts of Mexico would and should prevent it.

It was stipulated by the parties that a lawyer of the bar of Mexico, presumably familiar with the laws and policy of his country, a Mr. Ybarre, would testify that upon the facts of this case an Arizona judgment could not be pleaded in the Mexican courts as a bar or defense to a suit for the same debt in that country. As between the different states of the Union such a judgment would be a bar, since the federal Constitution requires that each state give full faith and credit to the judgments of the other states. *Harris* v. *Balk, supra; Louisville & N. R. Co.* v. *Deer,* 200 U. S. 176, 50 L. Ed. 426, 26 Sup. Ct. Rep. 207; *Baltimore & O. R. Co.* v. *Hostetter,* 240 U. S. 620, 60 L. Ed. 829, 36 Sup. Ct. Rep. 475 (see, also, Rose's U. S. Notes). These cases definitely settle that garnishment judgments in cases like this fall within the protection of the full-faith and credit clause of the federal Constitution, and that payment

after judgment in one jurisdiction will be a bar against the collection of the debt in any other jurisdiction. Prior to these decisions of our highest court, however, parties have been made to pay the same debt twice, through no fault or negligence of their own, because the second jurisdiction invoked refused to recognize jurisdiction, either over the subject matter or person, in the first court. *National Bank* v. *Furtick*, 2 Marv. (Del.) 35, 69 Am. St. Rep. 99, 44 L. R. A. 115, 42 Atl. 479.

The garnishee is in a sense a mere stakeholder. From a monetary standpoint, it can make no difference to him whether he pays what he owes to his employee or to the creditor of such employee, but he is interested in being protected against a double liability. While it is probable the Mexican courts would take notice of a payment of the debt in Arizona and refuse to compel a second payment, there is no international rule, or law, or treaty, so far as we know, requiring that they give faith and credit to judgments of this country's courts. The only case we have found like the one in the matter of diverse nationality and residence is *Martin* v. *Nadel (Dresdner Bank, Garnishee)*, 2 K. B. Div. (1906) 26. That was a case wherein his English creditors sought to subject a local bank credit of Nadel's, who was a citizen and resident of Germany, to the payment of their debts by garnishment proceedings in the English courts. After stating the contention of the garnishee bank that the German laws would not recognize a payment made in England under garnishment proceedings, and that Nadel would be entitled to sue the bank in Germany and recover, Lord Justice WILLIAMS VAUGHAN said:

"I do not think that ultimately it was disputed that such a payment would ·be no answer to the action. It appears to me to be clear that a garnishee order is of the nature of an execution, and is gov-

erned by the *lex fori;* and by international law an execution which has been carried into effect in a foreign country under foreign law, and has taken away part of a man's property, is not recognized as binding. There can be no doubt that under the rules of international law the Dresdner Bank could not set up, in an action in Berlin, the execution levied in this country in respect to this debt. If we consider the converse case it is clear, to my mind, that we should take that view of a similar transaction occurring abroad."

Lord Justice STIRLING, commenting on the same facts, used this language:

"Mr. Dicey, at page 318 of his treatise on the Conflict of Laws, points out the rule of law that debts or choses in action are generally to be looked upon as situate in the country where they are properly recoverable or can be enforced. On the facts of this case, the debt of the bank to Nadel would be properly recoverable in Germany. That being so, it must be taken that the order of this court would not protect the bank from being called on to pay the debt a second time. That is a good reason why the order should not be made, for to make it would be inequitable and contrary to natural justice."

The court of appeals accordingly held that the English creditors were not entitled to the garnishment, either on grounds of natural justice or legal right. It seems to us, since the services were all rendered in the Republic of Mexico for a corporation whose plant is entirely in that country, and since the debt was made and payable therein, the company ought not to be compelled to pay such debt to an Arizona creditor when it is not only possible but probable it would have to pay it again.

The judgment is affirmed.

McALISTER, C. J., and LYMAN, J., concur.