HARTFORD FIRE INSURANCE COMPANY *v.* CITIZENS' BANK OF
BOONEVILLE

Opinion delivered December 15, 1924.

1. INSURANCE—RIGHTS OF ASSIGNEE OF FIRE INSURANCE POLICY.—Where insurance companies, without consideration, assented to the assignment of fire policies after loss, the assignees had no greater rights against the insurers than the insured had, and took subject to prior garnishment proceedings against the insured in another State.

2. GARNISHMENT—PROCEEDING IN ANOTHER STATE.—Where insurance companies garnished in Oklahoma on account of a debt owing under fire policies to a resident of Arkansas, answered, setting up all facts and giving assignees of the policies residing in Arkansas notice of the pendency of the action, and had them interpleaded under the Oklahoma statute, *held* the Oklahoma court acquired jurisdiction to render judgment against the

assignees, barring them of interest in the policies to the extent
of the judgment against the principal defendant, who was prop-
erly served.

3.  GARNISHMENT—JURISDICTION.—The amount due to a resident of
this State on fire policies is subject to garnishment in another
State, where service was had in that State on the insurers,
and service was had in this State according to the Oklahoma
law upon the insured and his assignee.

4.  GARNISHMENT—FOREIGN JUDGMENT—FULL FAITH AND CREDIT.—
A judgment of another State, in all things regular, is entitled
to full faith and credit in this State.

Appeal from Logan Circuit Court, Southern Dis-
trict; *James Cochran,* Judge; reversed.

*Rittenhouse & Rittenhouse, John P. Roberts* and
*Thompson, Knight, Baker & Harris,* for appellants.

1.    The Oklahoma court had authority and jurisdic-
tion to try and determine the garnishment suit, and to
render judgment therein. Chap. 3, art. 9, Comp. Statutes
Oklahoma, 1921, §§ 353, 356, 366; 113 Ark. 467, 169 S. W.
223; 49 Ark. 386, 96 S. W. 397; 69 Ark. 401, 63 S. W. 996;
174 U. S. 710, 43 L. ed. 1144; 198 U. S. 215, 49 L. ed. 1023;
L. R. A. 1915F, 881, note; 54 So. 728; 53 Okla. 515; 157
Pac. 106.

2.    The judgment of the Oklahoma court is entitled
to full faith and credit, and renders the issue in this case
*res judicata,* to the extent of that judgment. Section 1,
art. 4, Const. U. S.; Revised Statutes U. S., § 905, U. S.
Comp. Stats. 1916, § 1519, 3 Fed. Stat. Ann., 37; 91 Ark.
252; 120 S. W. 993; 240 U. S. 620, 60 L. ed. 829; 169 Pac.
619; 134 N. W. 573 (Ia.); 100 N. W. 918 (Mich.); 25 N.
W. 49 (Mich.); 9 N. W. 646 (Neb.); 141 S. W. 595 (Mo.),
53 S. E. 831 (N. C.); 115 S. W. 275 (Tex.); 66 N. E. 43
(Ind.); 104 N. W. 878 (New); 53 S. E. 831 (N. C.); 45
Ill. App. 533; 35 Ala. 144, 73 Am. Dec. 484; 11 Mass. 256;
28 C. J. 384; *Id.* 399.

3.    The defendants, having tendered to plaintiffs the
balance due on the fire loss over and above the amount of
the Oklahoma judgment and costs, said plaintiffs were
not entitled to judgment for more than the amount so
tendered and the cost then accrued.

*Evans & Evans,* for appellees.

1. By assignment of the polices and the written consent thereto by the insurance companies, the latter ceased to have any contractual relations with Donothan with reference to the subject-matter covered by the policies, and entered into contractual relations with appellees, and, by this new contract, agreed to pay the loss, when adjusted, to the appellees, respectively; and the appellees had the right to sue on this new contract without joining Donothan as a party to the suit; 97 Me. 547; 94 Am. St. Rep. 521; 14 R. C. L. 1004, § 182; 123 Ga. 181; 51 S. E. 429; 3 Ann. Cas. 372, and note; 40 Pac. St. 289; 80 Am. Dec. 573; 10 W. Va. 546; 27 Am. Rep. 593; 56 Am. Dec. 749, note; 3 Ann. Cas. 477, note.

2. The Oklahoma court had no jurisdiction to try and determine the garnishment suit, or to render any judgment therein affecting the rights of the appellees in this suit. Where there is no jurisdiction *in personam* nor *in rem,* there is no jurisdiction at all. The undisputed evidence is that there was no *res* of Donothan within the jurisdiction of the Oklahoma court, and that he himself was not within its jurisdiction. 243 U. S. 269; 61 L. ed. 713; 49 Pac. 48; 71 Vt. 457, 76 A. S. R. 787; 44 S. C. 95, 51 A. S. R. 794.

3. A judgment of the court of another State which is rendered without jurisdiction of the person of the defendant or without seizure of any of his property, is not a judgment entitled to full faith and credit. It is void. 123 Ark. 42; art. 4, § 1, U. S. Const.; Rev. Statutes U. S. § 905; 151 Pac. 879; 48 Ark. 151; 105 Ark. 5; 95 U. S. 714, 24 L. ed. 565: 181 U. S. 155, 45 L. ed. 794; 201 U. S. 562, 50 L. ed. 867; 9 D. C. L. 515; 226 U. S. 551, 57 L. ed. 347.

WOOD, J. These actions were instituted in the Logan Circuit Court, February 21, 1923, by the respective plaintiffs below (appellees here) against the respective defendants below (appellants here). The actions were to recover on fire insurance policies issued by each of the respective appellants in favor of one F. L. Donothan, a

resident of Booneville, Arkansas. The policies covered a theater building and its equipment. The appellants are foreign insurance companies doing business in this State, and had an insurance agency at Booneville through which these policies were negotiated.

The property insured was destroyed by fire on January 26, 1923. On the 30th of January, 1923, Donothan, the insured, for a valuable consideration, assigned the policies to the appellees, with the express consent of the appellants indorsed thereon. On the 8th or 9th of February, 1923, the terms of the policy as to notice and proof of loss were duly complied with. The amount due under the policies was payable in sixty days after proof of loss.

On February 12, 1923, an action was instituted in the district court of Oklahoma County, Oklahoma, by the Vitograph, Inc., against Donothan, for an alleged indebtedness on a contract in the sum of $600. Writs of garnishment in that action were issued and served on the appellants, garnishees, to impound the proceeds of the policies in the hands of the appellants. Donothan, the defendant in the action, and at that time a citizen of Booneville, Arkansas, was served with process according to the statutes of Oklahoma. The garnishees, appellants, were likewise duly served with process in the Oklahoma action, and they answered alleging that they were not in any manner indebted to Donothan, the defendant in the action, and did not have any real estate or personal effects in their possession in which he had an interest. They denied liability to him, and further set up that the court was without jurisdiction, and that the proceeds of the insurance policies issued to Donothan were not subject to garnishment.

Thereafter, on March 24, 1923, the appellants filed their amended answers in the Oklahoma suit, in which they set up that they were liable for loss on the policies issued to Donothan, and that an action had been instituted against them by the appellees, assignees of the policies, in Arkansas, to recover said loss, and that they had on hand the proceeds of the amounts due under the policies,

which they held subject to the garnishments and assignments mentioned. They alleged that, since the service of the writs of garnishment upon them, the assignees of the policies, the appellees herein, had brought suit in Logan County, Arkansas, to recover the sums due under the policies, and they prayed that the appellees be required to interplead in the Oklahoma suit, to the end that "the rights of all parties may be adjudicated in this action, and that these garnishees be not vexed with two suits for the same debt and be compelled to pay the same twice."

The appellees were thus made parties defendant to the Oklahoma suit, and were duly served with process in that action under the Oklahoma law, and directed to answer within twenty days after such service. The defendant Donothan and the appellees failed to appear and plead in the Oklahoma action, and they were adjudged by the Oklahoma court, on May 5, 1923, to be in default. The cause in the Oklahoma court came on for trial on May 7, 1923, and judgment was rendered in that action in favor of the plaintiff, the Vitograph Incorporated Company, against the defendant Donothan, in the sum of $600, with interest, total $668.30.

The court also rendered judgment against the appellants. Against the Philadelphia company in the sum of $368.88, and the Hartford company in the sum of $645.55, an aggregate sum of $1,014.43, as the proceeds of the policies in their hands as garnishees, and commanded them to pay the sum of $668.30 into court, and also the sum of $72 to cover interest pending an appeal in the Oklahoma Supreme Court, amounting in the aggregate to the sum of $740. The Oklahoma court, in its judgment, further ordered that the appellees, who were interpleaded and made defendants in that action, be forever barred from any right or interest in the proceeds of the policies to the extent of the above judgment. The appellant insurance companies duly prosecuted their appeal from the judgment of the Oklahoma district court to the Supreme Court.

At the beginning of the trial of this action, the appellants tendered the appellee in open court the sum of $274.13 in settlement of all claims against the appellants, the amount being the balance of the proceeds of the policies in their hands over and above the amount of the Oklahoma judgment. In their answers in this action the appellants pleaded the disclaimer and interpleader statutes of Oklahoma, pursuant to which the Oklahoma action and proceedings were prosecuted, and also pleaded the judgment of the district court of Oklahoma in bar of the present action to the extent of that judgment.

There was testimony on behalf of the appellees to the effect that Elkins was the local agent of the appellants at Booneville, and issued the policies to Donothan; that the property covered by the policies was destroyed by fire about the 26th of January, 1923. He consented, acting for the appellants, to the assignment of the policies by Donothan to the appellees after the loss occurred. A few days after the assignment of the policies, a man by the name of Kincannon came to see witness, to get him to give the name of the companies issuing the policies. Witness refused, and told him the policies had been assigned to the appellees.

Witness Kincannon testified that he was an attorney at law in Booneville, Arkansas; that, a few days after the loss covered by the policies, a man by the name of Myers, claiming that he represented the Vitograph Inc. Company, came to see witness. He retained witness' services. Witness interviewed Elkins, the local agent of the appellants, to ascertain the names of the companies issuing the policies, in order to determine whether they had made an adjustment, and witness was advised by Elkins that the policies had been assigned.

Chas. I. Evans testified that he was an attorney at law at Booneville, Arkansas, and that he had a conversation with Myers a few days after the assignment of the policies to the appellees. Myers claimed to be representing the Vitograph Inc., and stated that he was going to garnish the insurance money belonging to Donothan.

Witness told Myers that the policies had been assigned to the appellees.

It was shown by the cashiers of the respective appellees that they paid Donothan a valuable consideration for the assignment of the policies. Donothan testified that he was a resident of Booneville, Arkansas, at the time the suit was instituted against him in Oklahoma by the Vitograph Inc. Company, and he was notified of the pendency of that suit. At that time he didn't have any property in the State of Oklahoma.

The causes were consolidated and tried upon the above facts, before the court sitting as a jury. The court rendered a judgment in favor of the appellees against the appellants amounting in the aggregate to the sum of $1,038.15, from which judgment is this appeal.

1. The appellees contend, as stated by their learned counsel, that they had the right to maintain their suits in the Arkansas court, upon Arkansas contracts, by which contracts the appellants in this case had promised to pay the banks the amount sued for; that these suits are simply suits on contracts between the appellants and the appellees, by which the appellants are liable to the appellees, regardless of the prior garnishment proceedings and judgment thereon against them in the Oklahoma court. This contention of learned counsel for the appellees is unsound, and cannot be sustained, for the reason that, after the loss on the policies occurred, the appellants merely assented to the assignment of those policies by Donothan, the insured, to the appellee. No consideration moved from the appellees to the appellants for such an assignment, and there was no contract between the appellees and the appellants by which the latter, for a valuable consideration, agreed to pay the loss that had accrued under the policies to the appellees. The contract of assignment was after the loss had accrued, and was between the appellees and the insured, Donothan. The effect of the assignment after the loss had occurred and the proof and adjustment thereof, was to transfer Donothan's cause of action and rights under the policies to

the appellees. The assignment simply placed appellees in Donothan's shoes—it did not vest the appellees with any other or greater rights under the policies against the appellants than Donothan himself would have had.

Appellees' pleadings show that their right of action as assignees against the appellants was predicated on the policies or contracts of insurance between their assignor, Donothan, and the appellants, and not on any separate contract between the appellees and the appellants, for, as we have stated, there was none, and could not have been any by the mere assent to the assignment after the loss had accrued.

2. The next question is, did the action instituted by the Vitograph Company against Donothan on the 12th of February, 1923, and the issuance and service of writs of garnishment in that action against the appellants in the district court of Oklahoma, and the interpleading by the appellants of the appellees, give the Oklahoma district court jurisdiction to render the judgment therein against the appellees? The statutes of Oklahoma give any creditor the right to proceed by garnishment against any person who shall be indebted to, or have any property, real or personal, in his possession or under his control belonging to such creditors, and, on service being had as provided in the statute, to enter and collect judgment against the garnishee as in attachment and garnishment proceedings. Sections 353-356, c. 3, art. 9, Compiled Statutes Oklahoma, 1921.

Section 366 gives the garnishee the right to interplead any other person than the defendant who claims the indebtedness on the property in the garnishee's hands, by disclosing in its answer the name and residence of such claimant, and gives the garnishee the right to make such claimant a party defendant to the action and to have him served with process, and, after such service, the garnishee may pay or deliver the indebtedness or property into court and be discharged from all liability for the amount paid or property so delivered. Under this statute, upon service being had upon the party interpleaded, such party

shall be deemed a defendant to the garnishee action, and is required to file an answer within twenty days, setting forth his claim or any defense which the garnishee might have made, and, in case of default, judgment may be rendered which shall conclude any claim upon the part of such defendant. It thus appears that, under the laws of Oklahoma, the Vitograph Company had the right to institute this action in the district court of Oklahoma against Donothan, its debtor, and to garnish the appellants; and also that the appellants, as garnishees, in their answer had the right to disclose that the appellees were claiming the indebtedness, and to have them interpleaded and made parties defendant in the district court of Oklahoma. All this was done, as the undisputed facts above set forth show, before the appellees instituted this action in the Logan Circuit Court against the appellants to recover on the policies.

The Oklahoma statutory law on garnishment is in conformity with the law that obtains in our own and other State jurisdictions, and also as laid down by the Supreme Court of the United States. In *Kansas City, etc., Ry. Co. v. Parker,* 69 Ark. 401, it is said that "a *situs* of a debt for purposes of garnishment is not only at the domicile of the debtor, but in any State in which the garnishee may be found, provided the law of that State permits the debtor to be garnished, and provided the court acquires jurisdiction over the garnishee through his voluntary appearance or actual service of process upon him within the State." *Stone v. Drake,* 79 Ark. 384; *Person v. Williams-Echols Dry Goods Co..* 113 Ark. 467; *Chicago, R. I. & P. Ry. Co. v. Sturm.* 174 U. S. 710.

In *Chicago, Rock Island Ry. Co. v. Sturm, supra,* it is held: "The *situs* of the property in a debt can be changed only by the change of location of the creditor who is the owner thereof, or with his consent. * * * All debts are payable everywhere, unless there be some special limitation or provision in respect to the payment; the rule being that debts as such have no *locus* or *situs,* but accompany the creditor everywhere, and authorize a

demand upon the debtor everywhere." And in *Harris* v. *Balk,* 198 U. S. 215, it is held, quoting syllabus: "Attachment is the creature of the local law, and power over the person of the garnishee confers jurisdiction on the courts of the State where the writ issues."

But learned counsel for the appellees say "the undisputed proof in the case shows that there was no *res* of Donothan within the jurisdiction of the Oklahoma court, and that Donothan was not within the jurisdiction of such court." They contend that, inasmuch as Donothan had assigned the policies to the appellees, there was no longer any property in the State of Oklahoma belonging to Donothan and subject to the process of garnishment. The fallacy of this contention and argument is in the premise upon which it is predicated. The premise is unsound because it assumes that the amount of the debt due by the appellants on the policies of insurance was not the *res,* that is, property of Donothan in Oklahoma, subject to garnishment because of the assignment of the policies to the appellees. Whereas the debt or amount due under the policies is the *res,* and, under the Oklahoma statutes and decisions, as well as our own, and the decisions of the Supreme Court of the United States, such debt was subject to the process of garnishment issued out of the Oklahoma court. As is said by the Supreme Court of the United States in *Chicago, R. I. & P. Ry. Co.* v. *Sturm, supra,* "The essential service of foreign attachment laws is to reach and arrest the payment of what is due and might be paid to a nonresident to the defeat of his creditors. To do it he must go to the domicile of his debtor, and can only do it under the laws and procedure in force there. This is a legal necessity, and considerations of *situs* are somewhat artificial. If not artificial, whatever of substance there is must be with the debtor. He, and he only, has something in his hands. That something is the *res,* and gives character to the action as one in the nature of a proceeding *in rem.* To ignore this is to give immunity to debts owed to nonresidents creditors from attachments by their

creditors, and to deny necessary remedies. A debt may be as valuable as tangible things. * * * Of course, the debt is the property of the creditor, and, because it is, the law seeks to subject it, as it does other property, to the payment of his creditors."

Service was had upon Donothan, the nonresident of Oklahoma, under the garnishment law of that State, and also upon the appellants, as garnishees. This gave the Oklahoma court jurisdiction of the parties and of the res, or proceeds of the policies in the hands of the appellants, as between the Vitograph company, Donothan, and the appellants. The answer of the appellants in that suit and the service of process upon the appellee by which they were interpleaded and made parties defendant under the Oklahoma statutes, also gave the Oklahoma court jurisdiction to dispose of the whole matter as between the appellees and the other parties to the Oklahoma action, provided there was no collusion or fraud upon the part of the appellants and the Vitograph company by which the appellants, in their answer, failed to make a true statement of the facts and a full disclosure of the rights of the appellees as assignees of the policies. The testimony does not disclose any collusion between the appellants and the Vitograph company to defraud the appellees in any way. The Vitograph company had the right to select the forum for instituting its action against Donothan, and is not to be criticized or censured because it selected the forum most convenient to it, and where it could garnish the proceeds of the policies in the hands of the appellants. The answer of the appellants in the garnishment was a complete disclosure of all the rights of the appellees under the assignment of the policies, and appellants pursued to the letter the Oklahoma statute in giving appellees notice of the garnishment and praying that they be interpleaded and made parties defendant. There was, in short, no failure or negligence on the part of the appellants to perform their duty to the appellees. Appellants notified appellees of the garnishment, and set forth in their answer

every fact concerning the right of appellees as assignees of the policies.

The case therefore differs vitally in this respect from the case of *St. Louis & S. F. R. Co.* v. *Crews,* 151 Pac. (Okla.) 879, upon which the appellees rely. Here every defensive matter was set up by the appellants in their answer to the garnishment that could be set up to protect the rights of the appellee, which was not the case in *Ry.* v. *Crews.* The present action is likewise clearly differentiated on the facts from the case of *Detroit Fire & Marine Ins. Co.* v. *Stewart,* 123 Ark. 42, upon which the appellees rely. It would unduly extend this opinion to set forth and discuss the facts in detail. Suffice it to say, the garnishee in that case did not make a full disclosure of the facts so as to protect the rights of strangers to the garnishment proceedings, and we held that the garnishees could not avail themselves of a judgment rendered against them as against the rights of third parties whose rights they did not disclose. In that case, among other things, we said: "It is the duty of the garnishee to make a full disclosure of the facts, and, in the absence of such disclosure, it cannot plead the judgment in the garnishment proceedings as a defense to a suit of a third person. * * * Defendant has not shown that it pleaded the facts in the garnishment proceedings, or even that it gave interested parties actual notice of the pendency of the proceedings, therefore it is not entitled to plead the Texas judgment for that reason, if no other."

But here the appellants, as garnishees, as we have stated, fully set forth in their answer all the facts in the garnishment action in the Oklahoma court affecting the appellees, and gave them notice of the pendency of that action, and had them interpleaded and brought into that action, so that appellees might protect their rights as assignees of the policies. In ignoring this action of the Oklahoma court, and in failing to appear there and set up their rights as the assignees of the policies, the appellees made their fatal mistake. The Oklahoma court

had acquired jurisdiction of the parties and subject-matter before the appellees instituted their present action in the Logan Circuit Court. In addition to the authorities already cited, see *St. Louis S. W. Ry. Co.* v. *Vanderburg,* 91 Ark. 252; *Citizens' Bank* v. *Rudyard,* 152 N. W. 1077; *Stelzer* v. *Ry.,* 134 N. W. 573.

3.  The judgment of the Oklahoma district court against the appellees, being in all things regular, is entitled to full faith and credit in this action. *St. Louis S. W. Ry. Co.* v. *Vanderburg, supra; Davis* v. *Patterson,* 137 Ark. 187; *Shaw* v. *Polk,* 152 Ark. 18; *State ex rel. Craighead County* v. *St. Louis, etc. Ry. Co.,* 162 Ark. 443; *Howard-Sevier Road Imp. Dist.* v. *Hunt, ante* p. 62. Appellees are bound by that judgment, and it is a bar to the maintenance of their action against the appellants to the extent of the Oklahoma judgment rendered in favor of the Vitograph company against the appellants. In addition to the authorities cited, see also *B. & O. Ry. Co.* v. *Hostetter,* 240 U. S. 620; *Stelzer* v. *Ry. Co.,* 134 N. W. 573; *Rothschild* v. *Burton,* 25 N. W. 49, and other authorities to this point cited in appellants' brief.

4.  The appellants tendered to the appellees the balance due on the policies over and above the Oklahoma judgment, together with costs, which the appellees refused to accept. It follows, from what we have already said, that the appellees were not entitled to any greater amount than the sum tendered. For the errors indicated the judgment is reversed, and the cause will be remanded with directions to the trial court to enter a judgment in favor of the appellees against the appellants in the sum of $274.13, and the costs that had accrued up to the time of the tender.