PARKER, PEEBLES & KNOX, INC. *vs.* NATIONAL FIRE INSURANCE COMPANY OF HARTFORD.

H. MANN & COMPANY, INC. *vs.* NATIONAL FIRE INSURANCE COMPANY OF HARTFORD.

First Judicial District, Hartford, January Term, 1930.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued January 7th—decided May 9th, 1930.

*John L. Collins,* for the appellant (plaintiff in the Parker case) and appellee (plaintiff in the Mann case), with whom was *Philip W. Lowry,* for the appellee (plaintiff in the Mann case).

*Wallace W. Brown,* with whom were *John H. Buck* and *Charles Welles Gross,* for the appellee (defendant in the Parker case) and appellant (defendant in the Mann case).

HAINES, J. The Parker case is founded upon a judgment obtained by the plaintiff against El Saieh, which was affirmed upon appeal to this court. *Parker, Peebles & Knox* v. *El Saieh,* 107 Conn. 545, 141 Atl. 884. The Mann case is founded upon a judgment

against El Saieh rendered in the Superior Court November 19th, 1926, and not appealed from. In both cases the present defendant was served with garnishee process alleging that it was the agent, trustee and debtor of El Saieh. Both the plaintiffs are New York corporations having their principal places of business in the city of New York. The defendant is a Connecticut corporation, which was authorized by the laws of Haiti to do business in that jurisdiction. El Saieh was a resident of Haiti, where he conducted a store, and the defendant company had issued a policy of $20,000 on his merchandise, against loss by fire. One of the provisions of the policy was that it should "not be valid until countersigned and delivered by the duly authorized General-Agent of the [defendant] Company at Port-au-Prince, Haiti, W. I.," and it was so countersigned and delivered there, and was in force at the time of the fire. At the time of the service of the foreign attachment in these cases, the loss which El Saieh had suffered by reason of the fire had not been adjusted, but the defendant conceded its obligation to him. At the time of the fire El Saieh had many creditors, including these plaintiffs, and afterward various actions and proceedings were brought against him in the courts of Haiti and in this State, and the funds in the hands of the defendant attached by garnishee process. To these actions, reference will be made, so far as necessary, in the further consideration of these appeals. In this situation, El Saieh was adjudicated a bankrupt by the courts of Haiti and an assignee in bankruptcy was duly appointed. The fire occurred November 2d, 1925, and on January 7th, 1926, El Saieh and the defendant, under a nonwaiver agreement, determined the loss under the policy to be $18,745.42. About February 10th, 1926, the defendant received and accepted from El Saieh, the proofs of loss and acknowledged its liabil-

ity under the policy in the above sum. At no time was the liability of the defendant denied, and it was at all times ready, able and willing to discharge its obligation to El Saieh provided it was not required to do so more than once. In July, 1926, El Saieh demanded payment from the defendant's agent in Haiti. With numerous legal actions in process and threatened, with negotiations under way for settlement, and with El Saieh's legal status involved, the defendant did not pay until the early part of October, 1927, at which time it sought to make payment in full by replacement in Haiti of the destroyed stock of goods, in line with its policy option which permitted replacement of goods or payment in cash. Its attempted replacement, however, did not conform to the policy requirements and its action is found by the trial court to have been the equivalent of a payment in cash.

Parker, Peebles & Knox brought two actions in Haiti in March, 1926, one before and one after its Connecticut action, which latter was brought March 10th, 1926, and resulted in a judgment against El Saieh for $8,-325.45 and costs. Upon appeal by the assignee in bankruptcy, this judgment was affirmed as above indicated. Before the last-named action, two others had been brought in this State, one by Alfred Mullen in January, 1926, withdrawn March 20th, 1928, and another by Mann & Company on February 9th, 1926, the latter resulting in the judgment above referred to, for $6,105 and costs, and thereafter the plaintiffs brought the present actions of *scire facias*.

One of the defenses interposed in each of these cases was that under the laws of the Republic of Haiti, the defendant was absolutely bound to discharge, in Haiti, the obligations incurred by reason of the policy, and in fulfilling such liability, it chose its alternative to replace, that "the courts of the Republic of Haiti would

not have recognized and will not recognize any judgments which might have been or may be rendered elsewhere than in said Republic of Haiti, holding that the benefits of said policy had accrued or should accrue to any other person than said El Saieh or his assignee in bankruptcy," and that "if this court should render judgment against the defendant in this case, it would be subjecting defendant to a double liability."

A demurrer to this defense was sustained in the Mann case, *Ells, J.;* overruled in the Parker case, *Marvin, J.*, and the cases were thereafter tried to the court, together, *Jennings, J.*, resulting in a judgment against the plaintiff in the Parker case, and against the defendant in the Mann case. In each case the losing party appeals.

Most of the corrections of the finding which are urged are not of a character to affect this particular question of double liability. The exceptions are those portions which have resulted from the admission of the so-called Exhibit 29, entitled "admission of the plaintiff with regard to the third defense of defendant's answer." Under this defense it was necessary for the defendant to prove, among other things, that by the laws of Haiti the defendant was absolutely bound to discharge, in Haiti, its full obligation to El Saieh under its policy, and that Haiti would not and will not recognize any judgment by a Connecticut court affecting that position, so that by judgment here, the defendant would be subjected to double liability. To establish this, the defendant offered in evidence a statement dated February 16th, 1929, apparently just prior to the time of its offer, and signed "John L. Collins, Attorney for the Plaintiff." The opening words of this paper were, "The plaintiff admits the following facts to be true and correct," but the right was reserved to object to the admission of the statement at the time of trial.

It then continued as follows: "Under the laws of the Republic of Haiti, the defendant was absolutely bound to discharge to El Saieh or his assignee in bankruptcy the obligations incurred by reason of said policy. Under the laws of said Republic, if the defendant paid the plaintiff as an, attaching creditor in Connecticut of said El Saieh, whether such payment had or had not been made under Connecticut judicial compulsion, the defendant would have remained liable, under Haitian law, to El Saieh's assignee in bankruptcy to the full extent of said policy. The courts of the Republic of Haiti would not have recognized and will not recognize any judgment which might have been or may be rendered elsewhere than in said Republic holding that the benefits of said policy had accrued or should accrue to any other person than said El Saieh or his assignee in bankruptcy. Should this court render judgment against the defendant in this case, and should the defendant satisfy it, the defendant would be paying more than the loss sustained under said policy to the extent of the judgment rendered. John L. Collins, Attorney for the Plaintiff."

Various objections to the admission of this paper were urged by the plaintiff, the general ground being that no facts should be admitted or considered by the court in support of this defense of double liability. Obviously if this was a valid defense, relevant evidence was admissible in support of it. The import of these objections therefore was that the defense itself was invalid and insufficient. All questions of that character, however, had been disposed of adversely to the plaintiff in the Parker case, by the ruling on demurrer, and the arguments against the admission of this paper were nothing more nor less than arguments against the sufficiency of the defense itself. The demurrer in the Parker case having been overruled, Exhibit 29, when

offered, was relevant and admissible evidence in support of the allegations of the defense of double liability, and the ruling was correct.

The overruling of the demurrer is assigned as error. The demurrer was on three grounds: (1) that it was not alleged that the replacement of the property by the defendant was under compulsion of Haitian judicial process in an action in Haiti, and the replacement was therefore a voluntary payment; (2) that the Connecticut courts have the power to enforce the plaintiff's judgments against El Saieh by judgments against this garnishee, and need not inquire whether such action will be recognized by the courts of Haiti, and (3) that it was not alleged that the defendant had been sued in Haiti by El Saieh or his assignee, or that Haiti would not recognize a defense of *pro tanto* discharge by payments of these judgments in Connecticut.

The vital feature of the defense demurred to is, that the defendant will be required to make a double payment if the judgments of Connecticut courts are sustained and payments made here by the defendant. The plaintiff's argument on the demurrer is, in part, that it is not alleged that the defendant disclosed, in the jurisdiction of Haiti, that the Connecticut litigation is pending, or that judgment has been rendered against the defendant in Haiti and that it has paid that judgment. That the existence of these facts would justify a defensive plea of double liability, is sufficiently clear. *Crouse* v. *Phœnix Ins. Co.*, 56 Conn. 176, 14 Atl. 82; *Bayer* v. *Lovelace*, 204 Mass. 327, 90 N. E. 538; *Lancashire Ins. Co.* v. *Corbetts*, 165 Ill. 592, 46 N. E. 631; *Hartford Fire Ins. Co.* v. *Citizens Bank*, 166 Ark. 551, 266 S. W. 675. But these are elements of proof only, by which the pleading of double liability is established, and need not be alleged in the plea itself; in other words, if the plea had been simply that the defend-

ant's payment of a Connecticut judgment would create a double liability, the plaintiff could have either demurred on the ground that double liability was not an adequate defense, or moved for a more specific statement in the pleading. The first and third grounds of demurrer are not well taken. We cannot construe the second ground of demurrer as raising the question whether double liability, if established, would be a valid defense. Such an issue is not raised by saying that the Connecticut courts are not required by law to consider the possible action of the Haitian courts in requiring the defendant to pay again. The demurrer was properly overruled.

We are thus where the trial court stood when it took up the consideration of this case on its merits. The defense of double liability and the factual admissions, Exhibit 29, were before it, the latter closing with the words: "Should this court render judgment against the defendant in this case, and should the defendant satisfy it, the defendant would be paying more than the loss sustained under said policy, to the extent of the judgment rendered." Was a judgment for the defendant under these circumstances erroneous?

It may be stated as a general proposition of law that debts, being intangible, have no strictly legal *situs,* though for most purposes they are given the *situs* of the creditor. However, for purposes of attachment by foreign creditors, they are by a legal fiction generally regarded as located where the debtor resides. *Crouse* v. *Phœnix Ins. Co.,* 56 Conn. 176, 14 Atl. 82; *Veeder Mfg. Co.* v. *Marshall-Sanders Co.,* 79 Conn. 15, 17, 63 Atl. 641; *Coyne* v. *Plume,* 90 Conn. 293, 97 Atl. 337; *Parker, Peebles & Knox* v. *El Saieh,* 107 Conn. 545, 555, 141 Atl. 884; *Paine* v. *Lester,* 44 Conn. 196; *Hartford & N. H. R. Co.* v. *Andrews,* 36 Conn. 213; *Lancashire Ins. Co.* v. *Corbetts,* 165 Ill. 592, 46 N. E. 631;

*National Fire Ins. Co.* v. *Chambers,* 53 N. J. Eq. 468, 491, 32 Atl. 663. It is true the *situs* of a debt for purposes of garnishment, has been a vexed and variously answered question in different jurisdictions. *Harvey* v. *Thompson,* 128 Ga. 147, 57 S. E. 104. We hold the law of this State to be in accord with the conclusion of the United States Supreme Court in the case of *Harris* v. *Balk,* 198 U. S. 215, 222, 25 Sup. Ct. 625: "If there be a law of the State providing for the attachment of the debt, then if the garnishee be found in that State, and process be personally served upon him therein, we think the court thereby acquires jurisdiction over him, and can garnishee the debt due from him to the debtor of the plaintiff and condemn it, provided the garnishee could himself be sued by his creditor in that State."

Where, as in this State, the right of foreign attachment is given by statute in general terms without distinction between residents and nonresidents, the latter may avail themselves of the remedy. General Statutes, § 5915.

The obligation of the insurance company to pay El Saieh attached to the debtor at all times after the fire, and in all places, whether in Haiti or Connecticut, or indeed at any other place where the company had a legal location and in a jurisdiction to which it had submitted itself. Such obligation was enforceable by El Saieh in any of those jurisdictions where service was properly made upon the company. *Harris* v. *Balk,* 198 U. S. 215, 222, 223, 25 Sup. Ct. 625; *Crouse* v. *Phœnix Ins. Co.,* 56 Conn. 176, 181, 14 Atl. 82; *Lancashire Ins. Co.* v. *Corbetts,* 165 Ill. 592, 597, 46 N. E. 631. The plaintiffs, as creditors of El Saieh, though residents of a neighboring State, are permitted by law to proceed against El Saieh and the defendant in the courts of this

State, by the process of foreign attachment, and the courts of this State have jurisdiction in the premises.

We said in *Parker, Peebles & Knox, supra,* at page 556, that in this case there was no deficiency of service or lack of control over the *res,* and upon this record, the requirements of *situs* and control are adequately met. There is therefore nothing in this record to prevent the rendition of judgment in favor of this plaintiff unless the fact, established of record, that it will result in the imposition of a double liability upon the defendant, be sufficient in law to prevent such judgment.

While the courts of this State are open by our law to residents of neighboring jurisdictions for the enforcement of their rights against those over whom we have jurisdiction, and they are permitted to avail themselves of our process of foreign attachment, as in this case, yet this right should only be extended so far as it will result in the discharge of the garnishee from the claim of his main creditor *pro tanto.* There is no basis of right or reason for requiring the garnishee to make payment to such foreign attachment creditor unless the garnishee's discharge to this extent from the principal debt, can thereby be accomplished by our courts. Surely there is no principle of comity or natural justice to support the demand that we shall impose a double liability upon an innocent citizen of our own State in satisfaction of the claim of a nonresident who avails himself of the privilege extended to him by comity, to come into our courts. This State, and others of the Union, "regard the giving effect to the laws of a sister State or foreign country, in case of the transfer of or succession to personal property within their own limits, as wholly an act of comity, and not a recognition of a right. This comity they are prepared to extend where there is no reason to the contrary, especially if there is no interest of their own citizens or of the citizens of

a sister State who are seeking to avail themselves of the protection of their laws, to be injuriously affected by such recognition." *Paine* v. *Lester,* 44 Conn. 196, 203; *Upton* v. *Hubbard,* 28 Conn. 274; Story on Conflict of Laws (5th Ed.) § 414. Imposing a double liability upon an innocent debtor is, in any event, a very serious matter, and one generally denied in all courts of justice. It ought to be and it is the object of courts to prevent payment of any debt twice over. "It is, of course, true, that every State must enforce its own laws within its own borders for the protection of its own citizens; but either the law, or the construction of it by the courts, in one or the other of the States is contrary to natural justice, which requires of a garnishee standing indifferent between creditors contending in different States for the same debt, the payment of that debt more than once." *Lancashire Ins. Co.* v. *Corbetts,* 165 Ill. 592, 596, 46 N. E. 631. "The fact that a party owing a debt may be subjected to the injury of being compelled to pay twice—once directly to his creditor, and then again to a third person for the benefit of his creditor, and so . . . indirectly to his creditor a second time—has always been treated by courts desiring to do justice as a matter of serious consideration, and, in fact, the one thing to be guarded against." *National Fire Ins. Co.* v. *Chambers,* 53 N. J. Eq. 468, 491, 32 Atl. 663. "Nothing can be more clearly just, than that a person who has been compelled, by a competent jurisdiction, to pay a debt once, should not be compelled to pay it over again. It has accordingly been a settled and acknowledged principle, in the English courts, that where a debt has been recovered of the debtor, under the process of foreign attachment, in an English colony, or in these United States, the recovery is a protection, in England, to the garnishee against his original creditor, and he may plead it in bar." *Embree* v. *Hanna,* 5 Johns. (N.

Y.) 100, 101. "If the garnishee may, without its fault and after complying in good faith with the laws in both jurisdictions, be compelled to pay the same debt twice, it may be compelled to pay it as many times as there are jurisdictions in which it transacts business; yet it is the doctrine of all the authorities that the garnishee is not to be placed in a worse position by the garnishment than he occupied as the debtor of the principal defendant, nor subjected to any greater liability because of the garnishment. . . . We cannot look with favor upon any construction of the law which would impose a double liability upon a garnishee who, without collusion, fraud or negligence, has undertaken to fully discharge its duties under apparently conflicting laws of different jurisdictions." Such a result "is contrary to natural justice." *Lancashire Ins. Co. v. Corbetts,* 165 Ill. 592, 596 et seq., 46 N. E. 631. We fully concur in and approve the foregoing observations, and it follows that the plaintiff will be denied judgment unless there be qualifying conditons of fact in this case, which will justify us in reading an exception into the general rule. The plaintiff urges two considerations which it is claimed should have that result. One is that the payment made by the insurance company within the jurisdiction of Haiti was not compulsory but voluntary, there being no judgment against it by the courts of Haiti, and the other that the company was negligent in not disclosing the proceedings in this State, to the claimants in the foreign jurisdiction.

The argument with reference to voluntary and compulsory payments is often found in the decisions where courts in the conflicting jurisdictions recognize the obligations of comity as in the case between the States of this country. In dealing with jurisdictions between which comity exists, the effect of a payment made by the garnishee to the principal creditor becomes of con-

trolling importance. The rights of a garnishee creditor who is entitled to relief under our own laws, can clearly not be set aside by the garnishee by making such a voluntary payment, the recognized rule being that where judgment is obtainable in more than one of such jurisdictions, that in which judgment is first rendered is recognized as having precedence. Upon the same principle it is necessary for the garnishee to establish, in order to avoid judgment against it on *scire facias*, that an earlier judgment was rendered against it and paid in another jurisdiction, and this being done, the defense is good. Much of the plaintiff's argument, however, upon this and several related points in the brief, ignores or overlooks the fact established by this record, that mutual comity does not exist between Haiti and Connecticut. Obviously the reason for the rule, which is urged, cannot exist under these circumstances, and the reason failing the rule fails. This record shows conclusively that the obligation of this garnishee to pay the debt in full in Haiti was an absolute one and that the courts of that jurisdiction would not recognize or give credit for any payment made here by the garnishee by compulsion of our courts. Under these circumstances the question of priority becomes of no importance, whereas between jurisdictions where comity exists it is of controlling importance. So also it becomes unimportant whether the payment made under these circumstances was voluntary or under compulsion. It was an obligation which the laws of Haiti could compel it to meet in full, and it can make no difference with this Connecticut proceeding when or how it was paid.

We think the established facts also dispose of the second contention, viz, that the garnishee has been negligent by failing to disclose the Connecticut litigation to the other claimants to the fund. All the cred-

itors of El Saieh who could make claim upon this fund in the hands of this garnishee, were legally represented by the assignee in bankruptcy. It appears from the file and in the decision in 107 Conn. 547, 141 Atl. 884, that not only was notice of the pendency of this Connecticut litigation given to the main creditor El Saieh himself by registered mail and a continuance first for three months and then for one month ordered, but it further appears that J. C. Clermont was recognized as the assignee in bankruptcy, representing all the creditors of El Saieh, and service upon Clermont was then made by registered mail, and later Clermont's attorney entered a special appearance in the case and pleaded to the jurisdiction, and thereafter appealed from the judgment, to this court. Under these circumstances it cannot be said that there has been any deficiency of notice to parties in interest, or failure to furnish all such parties full opportunity to appear and be heard in the Connecticut proceedings. We cannot hold that the plaintiff is entitled to take advantage of either of the claimed exceptions to the general rule above stated.

We hold the controlling considerations of this case are to be resolved in accordance with the principles laid down in *Weitzel* v. *Weitzel*, 27 Ariz. 117, 230 Pac. 1106, cited by the trial court and discussed at length in the arguments and briefs of counsel for both parties. Any attempt to distinguish that case, on principle, from the one at bar, must we think, fail. Moreover, considering the established facts of the case at bar and the facts in the English cases of *Martin* v. *Nadel*, L. R. (1906) 2 K. B. 26, *Swiss Bank Corporation* v. *Boehmische Industrial Bank*, L. R. (1923) 1 K. B. 673, and *Employers' Liability Assurance Corporation, Ltd.* v. *Sedgwick, Collins & Co., Ltd.*, L. R. (1927) App. Cas. 95, as well as *Petrogradsky M. K. Bank* v. *National*

*City Bank,* 253 N. Y. 23 (Adv. Sheet, Mar. 8, 1930), we do not find that these latter adversely affect our conclusion as to the fundamental soundness of the principles enunciated in the *Weitzel* case, and we do not further discuss them. In the *Weitzel* case, Josephine Weitzel sued out a writ of garnishment in an Arizona court against the Southern Pacific Railroad Company of Mexico, in an effort to reach a debt which the railroad company owed Harry E. Weitzel on account of wages earned in Mexico, and apply it on a judgment for alimony obtained by her in the Arizona court against Harry E. Weitzel in an action in which he was personally served and which he defended. The company admitted the employment of Harry E. Weitzel and that he was working for the company in Mexico and that it was indebted to him for a sum of money on that account, but pleaded that this sum was not subject to garnishment because it was wages earned and payable in Mexico, and that the Mexican courts would not recognize a payment made under the compulsion of the courts of Arizona, as part satisfaction of the debt which the company owed, but would compel the company to pay the claim in full to Harry E. Weitzel in the Republic of Mexico. Upon appeal to the Supreme Court of Arizona it was held that having employees in Arizona as well as in Mexico and doing considerable business there as well as maintaining a permanent bank account in that State, the courts of Arizona had jurisdiction. That portion of the decision in *Harris* v. *Balk, supra,* which we have quoted, as to the nature of garnishment proceedings, was approved, and it was held that the courts of Arizona were open to Harry E. Weitzel, the principal creditor to recover his debt from the company in that State. It was established that an Arizona judgment in favor of the garnishor-creditor of Harry E. Weitzel, however, could not be pleaded in the

Mexican courts in defense of a suit against the company brought by Harry E. Weitzel in that jurisdiction. The opinion then continues: "As between the different States of the Union such a judgment would be a bar, since the Federal Constitution requires that each State give full faith and credit to the judgments of the other States" (citing *Harris* v. *Balk, supra, Louisville & Nashville R. Co.* v. *Deer,* 200 U. S. 176, 26 Sup. Ct. 207, and *Baltimore & Ohio R. Co.* v. *Hostetter,* 240 U. S. 620, 36 Sup. Ct. 475). The court then considers the matter of diverse jurisdictions where comity does not exist and bases its conclusion that the garnishor creditor should not recover, upon the reasoning of Justice Stirling in *Martin* v. *Nadel,* where it was established that payment by a garnishee in England by order of an English court would not be recognized in Germany where the principal debt was payable. "'On the facts of this case, the debt of the bank to Nadel would be properly recoverable in Germany. That being so, it must be taken that the order of this court would not protect the bank from being called on to pay the debt a second time. That is a good reason why the order should not be made, for to make it would be inequitable and contrary to natural justice.'"

There are also impressive considerations of public policy involved in these issues. As was stated in the case of *Lancashire Ins. Co.* v. *Corbetts, supra,* if the plaintiffs' right to require payments from the garnishee is recognized, the principle is established that it and all other resident companies in this State, are liable to creditors from any number of other jurisdictions who may invoke our foreign attachment statute, with the intolerable and unjust result that the garnishee may be compelled to pay the full amount of the original obligation twice, once to the main creditor, and again to the individual creditors of that main creditor.

The plaintiffs had a complete remedy in the courts and under the laws of Haiti, and in fact did invoke the laws of that jurisdiction and instituted suit upon this very claim. With the sole purpose of obtaining full payment of its claim however, and at the expense of the other creditors of El Saieh, they have now come into this State and sought by invoking our statute of foreign attachment, a preferential payment of their claims in full under our law. Their position is that stated in *Crouse* v. *Phœnix Ins. Co.*, 56 Conn. 176, 14 Atl. 82, upon a somewhat similar state of facts: "They have transferred the controversy to this jurisdiction, within which the defendant has residence also, and estate, as speculators upon the possibility of obtaining the judgment here upon comity, which would be denied them there upon law. Practically, they have there had all rights and opportunities which are embraced in the expression 'a day in court'; they have no legal need of a second day here." It is apparent that these plaintiffs have been awarded their full pro rata share of this fund, with all the other creditors of El Saieh, by the laws of Haiti, and the above quoted comment applies to them with peculiar force.

We discover no requested and permissible changes in the finding, or other assignments of error, which can affect our conclusion that these plaintiffs are not entitled by law to recover in these actions.

There is no error in the case of Parker, Peebles & Knox v. National Fire Insurance Company of Hartford. There is error in the case of H. Mann & Company v. National Fire Insurance Company of Hartford and the case is remanded with direction to enter judgment for the defendant with costs.

In this opinion the other judges concurred.