Frederick M. Marshall, J.
The defendant moves this court for an order vacating and setting aside a garnishment of wages payable by the Canadian Railroad Company to the defendant and further moves for a direction to the Sheriff of the County of Erie to refund any and all moneys in his possession collected by virtue of said garnishment.
Defendant who is a resident of and is employed in Canada, on the 23rd day of September, 1960 negotiated a loan with plaintiff, a domestic corporation with offices in the City of Buffalo, New York.
As a result of defendant’s nonpayment, judgment was duly taken by plaintiff in the City Court of Buffalo on December 4, 1961. On December 13,1961, a transcript of said judgment was filed in the Erie County Clerk’s office.
On February 22,1962 the defendant made a voluntary assignment in bankruptcy under the Canadian Bankruptcy Act. The debt of the plaintiff was scheduled in said bankruptcy. Plaintiff did not appear.
On April 12, 1962 the plaintiff through the Sheriff of Erie County placed a garnishment against the defendant’s wages by serving the defendant’s employer, the Canadian National Railway Company, at its Buffalo, New York office.
The question before the court is: What effect does defendant’s Canadian voluntary assignment in bankruptcy have on a New York State creditor’s right to garnishment?
It is said to be “ well established ’ ’ that ‘ ‘ a discharge of a contract by the law of a place where the contract was not made, or to be performed, will not be a discharge of it in any other country.” (Story, Conflict of Laws [8th ed.J, § 342.)
The Supreme Court has held in McMillan v. McNeill (4 Wheat. [17 U. S.] 209, 213) that “ a discharge under a foreign law, was no bar to an action on a contract made in this country ”,
In Ogden v. Saunders (12 Wheat. [25 U. S.] 213, 272) the Supreme Court reaffirmed the McMillan principle, saying it ‘1 is one of universal law, and so obvious and incontestible, that it need be only understood to be assented to.” (See “ A Treatise on the Conflicts of Laws, Ehrenzweig [1962], § 50, p. 179.)
Where the defendant failed to establish that the situs of the contract was within the jurisdiction of the country of discharge, a foreign discharge has been held ineffective as a bar. (Green v. Sarmiento, Fed. Cas. No. 5,760.)
*383 In Phelps v. Borland (103 N. Y. 406) the defendant, a citizen of this country, drew his bill of exchange upon a Liverpool firm, which he sold to plaintiffs, residents of this State. The bill was accepted by the drawers, but they having failed, it was protested for nonpayment. The acceptors were discharged in bankruptcy by an English court. The New York court held (pp. 411-412) “ that the foreign discharge would have been, in and of itself, no defense to the American holder of the bill. If property of the bankrupt should be found in our jurisdiction, the plaintiffs were at liberty to proceed against it by attachment and collect their debt out of such property, and the foreign bankruptcy proceedings would neither prevent nor stand in the way ’ \ (See, also, Gardner v. Oliver Lee & Co. Bank, 11 Barb. 558; Matter of Waite, 99 N. Y. 433; Ogden v. Saunders, supra; Baldwin v. Hale, 1 Wall. [68 U. S.] 223.)
In the instant case the contract in question was established and executed in the State of New York. The plaintiff did not appear in the Canadian action. Under the principles outlined above, this court is not compelled to recognize the Canadian bankruptcy proceedings.
Defendant urges, however, that this court should under the principles of comity, recognize the Canadian bankruptcy proceedings.
The Court of Appeals in Matter of Waite (supra) said (p. 448): “the comity of nations which * * * is part of the common law, allows a certain effect here to titles derived under, and powers created by the laws of other countries, and from such comity the titles of foreign statutory assignees are recognized and enforced here, when they can be, without injustice to our own citizens, and without prejudice to the rights of creditors pursuing their remedies here under our own statutes ’ ’. (See, also, Abraham v. Plestoro, 3 Wend. 538; Oakey v. Bennett, 11 How. [52 U. S.] 33; Stone v. Penn Yan etc. Ry., 197 N. Y. 279; Union Guardian Trust Co. v. Broadway Nat. Bank, 138 Misc. 16; Petersen v. Chemical Bank, 32 N. Y. 21; Ann. 115 A. L. R. 813; Matter of Cobham, 193 Misc. 363; Koninklijke Lederfabriek etc. v. Chase Nat. Bank, 177 Misc. 186.)
To grant comity to the Canadian bankruptcy proceedings in this case would jeopardize the rights of a local creditor.
Defendant further argues that to allow the garnishment to stand would be unjust in that the employer would be exposed to possible double liability. Defendant cites the Canadian bankruptcy law which provides that all assets of the bankrupt vest in the bankruptcy trustee including all wages and accruing wages of the bankrupt, if the said bankruptcy trustee makes *384 claim for them. Defendant cites the case of Weitzel v. Weitzel (27 Ariz. 117). The facts of the Weitzel case are as follows: Josephine Weitzel obtained a judgment for alimony against her husband, Harry E. Weitzel, in Arizona, an action in which he was personally served and which he defended. She thereafter garnisheed the Southern Pacific Railway Company of Mexico in an effort to reach a debt it owed to Weitzel on account of wages he had earned in Mexico, in order to apply it to her judgment for alimony. The garnishee, Railroad Company, admitted its indebtedness to Weitzel, but claimed, among other things, that the Mexican courts would not recognize a forced payment in Arizona as satisfaction of the debt, but would make the company pay it over again in Mexico. The court held that, although the garnishee was within the jurisdiction of the court, a payment under the judgment in Arizona would not be an acquittance of the debt in Mexico and refused to recognize the Arizona garnishee.
The court in the Weitsel case relied upon the English rule laid down in Martin v. Nadel ([1906] 2 K. B. 26).
In the later case, of Swiss Bank Corp. v. Boehmische Ind. Bank ([1923] 1 K. B. 673), the English court refines the earlier Martin rule. In this case the garnishee argued that, should they be required to pay the amount due from them, it would still leave them liable in an action to recover the same debt in a competent court in a foreign place, and that in such an action they would probably be ordered to pay the amount now sought to be recovered by the judgment creditors over again to the judgment debtors. This defense was overruled, and judgment rendered for the garnishor, upon the ground that mere probability that the garnishee may be required to pay again was regarded as being insufficient ground for withholding a judgment.
There are two New York cases, although not involving garnishment proceedings which are relevant to the question of double liability. In Petrogradsky M. K. Bank v. National City Bank (253 N. Y. 23) one of the questions involved was the liability of a New York bank to Russian depositors and directors of a Russian bank, abolished by the Soviet Republic. The court held that the mere possibility of adverse claims does not relieve the defendant from liability when sued in an action at law. In the case of Russian Reinsurance Co. v. Stoddard (240 N. Y. 149) the court observed that the danger of double liability was not imminent, but negligible, that, even if it were imminent, it was not a defense at all, and that whatever risk the bank ran *385 was assumed as part of the business of a bank, on the theory that the chance of double payment is a common risk of life.
It should be observed that in the case of Parker, Peebles & Knox v. National Fire Ins. Co. (111 Conn. 383) it appeared as a fact, and was admitted that the foreign court would not recognize a judgment in garnishment rendered in Connecticut. Consequently, in that case the danger of double liability was positively established and was not a mere possibility.
In the instant case the Canadian Bankruptcy Act entitles the trustee to the wages of defendant only if he makes claim for them.
The double liability of the garnishee in this case is at most remote and it should not be permitted to stand in the way of plaintiff’s rights under the existing law. Motion denied, submit order.