[846 NYS2d 171]

JPMorgan Chase Bank, N.A., Respondent, v Motorola, Inc., Appellant.

First Department, November 29, 2007

APPEARANCES OF COUNSEL

*Kirkland & Ellis, LLP*, Chicago, Illinois (*Nader R. Boulos* of the Illinois bar admitted pro hac vice of counsel), and *Kirkland & Ellis, LLP*, New York City (*Matthew O. Solum* of counsel), for appellant.

*Foley & Lardner, LLP*, New York City (*Robert A. Scher, Jeremy L. Wallison* and *Yonaton Aronoff* of counsel), for respondent.

## OPINION OF THE COURT

FRIEDMAN, J.

Petitioner-respondent JPMorgan Chase Bank, N.A. (Chase) holds a default judgment against Iridium India Telecom Ltd. (IITL), an Indian company without assets in the United States. In an effort to collect on its judgment against IITL, Chase commenced this special proceeding under CPLR article 52 against respondent-appellant Motorola, Inc., a United States company currently being sued by IITL in India. The judgment from which Motorola is appealing directs that company, as garnishee, to pay Chase the amount of Chase's default judgment against IITL "[i]n the event Motorola shall become indebted, by judgment or otherwise, to [IITL] as a result" of the Indian action (2005 NY Slip Op 30145[U], *2).

The dispositive question on this appeal is whether the judgment of garnishment under review (assuming that it was otherwise proper under CPLR article 52) was providently granted, notwithstanding that it subjects the garnishee to a substantial risk of being required to pay the same liability twice. Our answer to this question is "no." In view of Motorola's uncontroverted expert evidence that the Indian courts will not grant recognition to Chase's default judgment against IITL or any judicial act enforcing that judgment, we conclude that the garnishment of the potential proceeds of IITL's Indian action against Motorola subjects the latter to an intolerably high risk of double liability, apart from any other possible defects the garnishment may have. Accordingly, the judgment against Motorola should be reversed, and the proceeding dismissed.

## FACTS

### Chase's Default Judgment Against IITL

Chase is the collateral agent for a consortium of lenders that extended an $800 million syndicated loan to a subsidiary of Iridium LLC, a Delaware limited liability company that owned and operated a satellite system for the support of telephone

networks. IITL, the judgment debtor in this proceeding, is one of the constituent members of Iridium LLC. As security for Chase's loan, Iridium LLC pledged the right to demand payment of its members' reserve capital call obligations. Pursuant to the pledge, Chase was empowered, in the event of a default on the loan, to demand that the members of Iridium LLC pay such obligations to Chase.

When the loan went into default in 1999, Chase, exercising its rights under Iridium LLC's pledge, demanded that the members of Iridium LLC, including IITL, pay Chase their respective reserve capital call obligations. In 2000, Chase commenced an action to enforce its unsatisfied demand against the members of Iridium LLC in the United States District Court for the District of Delaware pursuant to contractual provisions in which the parties consented to the jurisdiction of that court. IITL never appeared in the Delaware action. Based on IITL's failure to appear, the Delaware federal court entered a default judgment in Chase's favor against IITL in the amount of $10,872,999.05, with 6.241% interest from November 14, 2000, the date of entry.

Chase represents that, to date, it has been unable to collect "even a cent" of its default judgment against IITL. IITL apparently maintains no assets in the United States, and Chase's efforts to enforce the judgment in India have met with no success.

IITL's Action Against Motorola in India

In September 2002, IITL filed an action for fraud against Motorola in the High Court of Judicature at Bombay, India. In the Indian action, IITL seeks damages in excess of $200 million based on allegations that Motorola (which, like IITL, is a member of Iridium LLC) fraudulently induced IITL to invest in Iridium LLC and to build infrastructure for a telephone network to be supported by Iridium LLC's satellite system. Motorola denies these allegations and is defending the Indian action, which remains pending.

The Instant Proceeding

In 2005, Chase domesticated its Delaware default judgment against IITL in New York, thereby rendering the judgment enforceable in this state.[1] Thereafter, invoking the authority of CPLR 5227, Chase commenced this special proceeding against

---

1. Chase domesticated the Delaware default judgment in New York by first registering it with the United States District Court for the Southern District of New York, pursuant to 28 USC § 1963, and then filing a transcript of the Southern District registration with the office of the clerk of New York County, pursuant to CPLR 5018 (b) (see Siegel, NY Prac § 422, at 719 [4th ed]). The

Motorola in Supreme Court, New York County. Chase's petition seeks to garnish so much of any debt Motorola may incur to IITL as a result of the Indian action, "by judgment or otherwise," as equals the amount of Chase's default judgment against IITL. As required by CPLR 5227 (*see also* CPLR 5225 [b]), notice of the proceeding was served upon IITL, the judgment debtor, although it was not named as a respondent.

Motorola, while taking no position on the validity of Chase's default judgment against IITL, argued, inter alia, that, in view of the risk of double liability, the petition should be denied, or, if not denied outright, granted in a form conditioning Motorola's obligation to pay Chase on a determination in the Indian action that such payment would reduce Motorola's liability to IITL. Motorola contended that a New York judgment garnishing Motorola's possible liability to IITL will not be recognized in India and therefore will subject Motorola to double liability in the event IITL prevails in the Indian action. In support of this argument, Motorola submitted an expert opinion on Indian law by Hon. S. P. Bharucha, a former Chief Justice of India. According to Justice Bharucha, under Indian law, "[a] foreign judgment that has not been given on the merits of a case is not res judicata and will not be enforced by suit in the courts in India." Further, the Indian courts do not consider a foreign default judgment to have been rendered "on the merits." From these premises, Justice Bharucha concluded that the Indian courts will not enforce either Chase's default judgment against IITL or any order of garnishment based on that default judgment that might issue in this proceeding. Justice Bharucha opined:

> "In-as-much [*sic*] as efforts to enforce the default judgment in India have failed, and the default judgment is, in fact, incapable of such enforcement, the High Court at Bombay would not recognize as a garnishee order the direction [of the New York court] that Chase proposes to obtain in the said petition. The High Court at Bombay would, therefore, not give credit to [Motorola] in the suit filed against [Motorola] by IITL for any payment that [Motorola] may have to make to Chase pursuant to such direction [of the New York court]. Consequently, [Motorola] would become liable to pay the amount

domestication procedure provided by CPLR article 54, which Chase did not use, is not available for a judgment "obtained by default in appearance" (CPLR 5401).

covered by the direction twice over, once pursuant to the direction [of the New York court] and again pursuant to the decree in the suit in the High Court at Bombay."

Without seeking leave to intervene in the proceeding as provided by CPLR 5227 (*see also* CPLR 5225 [b]), IITL also submitted papers opposing Chase's petition. Among other things, IITL apparently raised the question of whether the possible future proceeds of the Indian action were assignable. In its memorandum of law, IITL contended: "[T]he inquiry must be whether the proceeds payable to IITL by *Motorola* in the India Litigation are available to Chase and whether Motorola has the ability to produce the proceeds to Chase." IITL also pointed out that, in the Indian action, Motorola had been ordered "to set aside certain funds with the Court to pay IITL." Ultimately, IITL (which, at that point, did not submit an expert opinion on Indian law) asked Supreme Court to "order further hearings to consider evidence on Indian law," among other matters.

In reply, Chase argued that CPLR 5209 ("Discharge of garnishee's obligation") affords Motorola sufficient protection from double liability. Chase contended that CPLR 5209 will obligate IITL, as a matter of New York law, to credit Motorola for any payment Motorola may make to Chase pursuant to a garnishment of the proceeds of a future judgment for IITL in the Indian action, whether or not such a garnishment will be recognized in India. To signify IITL's obligation so to credit Motorola, Chase suggested that the court direct IITL to execute and deliver to Motorola a writing stating that, in the event Motorola becomes obligated to pay IITL as a result of the Indian action, "the amount of such payment shall be reduced by the amount of [Chase's] Default Judgment (plus interest), which amount Motorola will pay directly to Chase." Chase did not, however, submit any expert opinion on Indian law rebutting Justice Bharucha's opinion that the Indian courts would not recognize a garnishment based on the Delaware default judgment. Nor did Chase explain how IITL—an Indian company without United States assets—could be compelled to credit Motorola for a payment made to Chase pursuant to a garnishment ordered in this proceeding if, as indicated by Justice Bharucha, the Indian courts would not recognize that garnishment.

After the submission of Chase's reply papers, Motorola submitted a "supplemental" affidavit by an attorney representing it in this proceeding. The "supplemental" affidavit stated

that Motorola was submitting it in response to the proposal in Chase's reply papers that the court direct IITL to execute and deliver a writing providing that IITL would credit Motorola for the amount of any payment to Chase. The "supplemental" affidavit notified the court for the first time that IITL was the subject of a "winding up" proceeding that had been commenced before the Bombay High Court of Judicature in August 2000, and that a January 2003 order issued in that proceeding "restrain[ed] [IITL] from creating any further encumbrances on the assets of the company." In addition, attached to the "supplemental" affidavit were copies of certain sections of India's Companies Act of 1956 (the Companies Act). Motorola's counsel drew attention to section 536 (2) of the Companies Act, which provides in pertinent part: "In the case of a winding up by or subject to the supervision of the Court, any disposition of the property (including actionable claims) of the company . . . made after the commencement of the winding up, shall, unless the Court otherwise orders, be void." Counsel also pointed to section 537 (1) (a) of the Companies Act, which provides in pertinent part: "Where any company is being wound up by or subject to the supervision of the Court . . . any attachment, distress or execution put in force, without leave of the Court, against the estate or effects of the company, after the commencement of the winding up . . . shall be void." The "supplemental" affidavit was not, however, accompanied by the opinion of an expert on Indian law regarding the effect of the foregoing statutes or of the Indian court's order prohibiting "encumbrances" of IITL's assets.

After hearing oral argument, Supreme Court rendered a written decision, dated August 4, 2005, directing the parties to settle a judgment that, while granting the petition, would direct IITL

> "to execute and deliver to Motorola a writing stating that in the event that Motorola shall become obligated, by judgment or otherwise, to pay [IITL] as a result of the Indian litigation, the amount of such payment shall be reduced by the amount of the default judgment, which amount Motorola will pay directly to Chase, *unless said agreement is determined to be void by the India court*" (2005 NY Slip Op 30140[U], *4 [emphasis added]).

This was an adoption, in substance, of Chase's proposal that IITL be directed to deliver a writing to Motorola, with the italicized phrase apparently added by the court to avoid requir-

ing IITL to do something that might violate its obligations under Indian law arising from the winding-up proceeding.

In the proceedings to settle judgment, Chase submitted a form of judgment that essentially tracked the language of the court's decision. Motorola opposed settlement of judgment in this form, again noting that it will not be protected from the risk of double liability unless its obligation to pay Chase is conditioned on a determination by the Indian court that such a payment will be deemed, under Indian law, to reduce Motorola's liability, if any, to IITL. Accordingly, Motorola submitted a counter judgment containing a proviso that Motorola would have no obligation to make a payment to Chase "[u]nless and until the Bombay High Court in the Winding-Up Proceeding enters a final judgment holding that the writing to be executed and delivered by [IITL] to Motorola . . . is valid and enforceable under Indian law."

Notwithstanding Supreme Court's decision to grant the petition, IITL submitted a form of judgment under which the petition would be denied. In support of its proposed judgment, IITL showed that, within a month of Supreme Court's decision in this proceeding, an Indian court known as the Debt Recovery Tribunal at Mumbai had specifically restrained IITL, on an interim basis, "from executing any undertaking/agreement in writing as ordered" by Supreme Court's decision, pending determination of a secured creditor's application for a permanent injunction against the same conduct. IITL also submitted an opinion by its Indian counsel to the effect that, under Indian law, IITL's execution and delivery of the writing contemplated by Supreme Court's decision would constitute a contempt of the Bombay High Court's aforementioned January 2003 order prohibiting IITL from creating new encumbrances of its assets. The Indian attorney further opined that IITL's execution and delivery of such a writing would violate the terms of a 1998 loan agreement, under which IITL granted a security interest in all of its assets to the State Bank of India.

Supreme Court signed the form of judgment proposed by Chase. The following are the operative provisions of the court's judgment, entered October 11, 2005:

> "I. In the event Motorola shall become indebted, by judgment or otherwise, to [IITL] as a result of [the Indian action], Motorola shall pay to Chase an amount up to $10,872,999.05, plus interest at 6.241% per annum, calculated from November 14,

2000 to present, plus fees and expenses Chase incurred in enforcing the [default] Judgment; and

"II. In conjunction with the granting of the Petition, [IITL] is directed to execute and deliver to Motorola a writing stating that, in the event that Motorola shall become obligated, by judgment or otherwise, to pay [IITL] as a result of [the Indian action], the amount of such payment shall be reduced by an amount up to $10,872,999.05, plus interest at 6.241% per annum, calculated from November 14, 2000 to present, plus fees and expenses Chase incurred in enforcing the [default] Judgment, which amount Motorola will pay directly to Chase, unless said agreement is determined to be void by the India Court" (2005 NY Slip Op 30145[U], *2).

## ANALYSIS

On appeal, Motorola's primary argument is that the judgment garnishing the potential liability it may incur to IITL as a result of the Indian action improperly subjects it to a high risk of double liability. Given the unrebutted evidence that the Indian court is unlikely to deem Motorola's liability to IITL to be reduced by any payment it makes to Chase pursuant to the judgment entered in this proceeding, Motorola contends that the petition should have been denied altogether, or, alternatively, granted in a form conditioning its obligation to pay Chase on a determination by the Indian court that such a payment will reduce its liability, if any, to IITL. Motorola also argues that, under Indian law, its potential liability to IITL cannot be "assigned or transferred" (CPLR 5201 [a], [b]) and is therefore unavailable for garnishment. Finally, Motorola argues that, by garnishing the potential proceeds of a future judgment or settlement that IITL may or may not obtain in the Indian action, Supreme Court "erred by prematurely exercising jurisdiction over a judgment that has not yet issued from a foreign court." Chase disputes all of these contentions, and argues, in particular, that, under New York law, "the possibility of double liability provides no basis" for disturbing the judgment appealed from. In our view, Motorola has the better argument on the issue of double liability, and this ground, by itself, suffices to require reversal.

We begin with a review of the provisions of CPLR article 52 bearing on the disposition of this appeal. CPLR 5201 sets forth

two broad categories of assets against which a money judgment may be enforced: (1) "debt" that is owed to the judgment debtor (subd [a]); and (2) "property" in which the judgment debtor has an interest (subd [b]).

CPLR 5201 (a) provides:

"(a) Debt against which a money judgment may be enforced. A money judgment may be enforced against any debt, *which is past due or which is yet to become due, certainly or upon demand of the judgment debtor*, whether it was incurred within or without the state, to or from a resident or non-resident, unless it is exempt from application to the satisfaction of the judgment. A debt may consist of a cause of action which could be assigned or transferred accruing within or without the state." (Emphasis added.)

CPLR 5201 (b) provides, in pertinent part:

"(b) Property against which a money judgment may be enforced. A money judgment may be enforced against any property *which could be assigned or transferred*, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment." (Emphasis added.)

A special proceeding for turnover is the procedural device provided by article 52 for enforcement of a judgment against an asset of the judgment debtor in the possession or custody of a third person; such a third person is known as a garnishee (*see* CPLR 105 [i] [defining a "garnishee" as "a person who owes a debt to a judgment debtor, or a person other than the judgment debtor who has property in his possession or custody in which a judgment debtor has an interest"]). Where the asset held by the garnishee is "property" of the judgment debtor, the statute authorizing the proceeding is CPLR 5225 (b).[2] Where the asset held by the garnishee is a "debt" the garnishee owes to the

---

2. CPLR 5225 (b) provides in pertinent part:

"(b) Property not in the possession of the judgment debtor. Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the

judgment debtor, the statute authorizing the proceeding is CPLR 5227.[3] Both CPLR 5225 (b) and CPLR 5227 require that notice of the proceeding be served upon the judgment debtor, whom the court may permit to intervene in the proceeding. The two statutes "are almost identical in terms of language, procedure, and effect" (11 Weinstein-Korn-Miller, NY Civ Prac ¶ 5227.00, at 52-432 [2d ed]).

In this case, Motorola's potential liability to IITL as a result of the Indian action cannot be subject to enforcement of Chase's judgment as a "debt" under CPLR 5201 (a), since the potential liability is neither "past due" nor "to become due, certainly or upon demand of the judgment debtor" (*see Matter of Supreme Mdse. Co. v Chemical Bank*, 70 NY2d 344, 349 [1987] [to be reachable under CPLR 5201 (a), a "debt" must be "a fixed obligation"]).[4] This, however, is not the end of the matter. It has long been held that a contingent future debt, even if not subject to levy as "debt" under CPLR 5201 (a), may be leviable as "property" under CPLR 5201 (b) (*see ABKCO Indus. v Apple*

---

judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor. . . . Notice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested. The court may permit the judgment debtor to intervene in the proceeding."

**3.** CPLR 5227, entitled "Payment of debts owed to judgment debtor," provides in pertinent part:

"Upon a special proceeding commenced by the judgment creditor, against any person who it is shown is or will become indebted to the judgment debtor, the court may require such person to pay to the judgment creditor the debt upon maturity, or so much of it as is sufficient to satisfy the judgment, and to execute and deliver any document necessary to effect payment; or it may direct that a judgment be entered against such person in favor of the judgment creditor. . . . Notice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested. The court may permit the judgment debtor to intervene in the proceeding."

**4.** While CPLR 5201 (a) also provides that a "debt may consist of a cause of action which could be assigned or transferred," the garnishment of a cause of action requires the judgment creditor to "stand[ ] in the judgment debtor's shoes" and "prov[e] the judgment debtor's case" against the garnishee (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5227:2, at 304). Here, Chase has never made any effort to prove IITL's cause of action against Motorola, and, on appeal, it specifically denies ever having sought to garnish IITL's cause of action.

*Films*, 39 NY2d 670 [1976] [a debtor's contractual right to be paid by the garnishee part of a film's future net profits was reachable as "property" under CPLR 5201 (b), although the garnishee's duty to pay the debtor was not reachable as "debt" under CPLR 5201 (a) because the film was not certain to be profitable]; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5201:5). Thus, Motorola's potential liability in the Indian action may qualify as "property" available for enforcement of Chase's judgment under CPLR 5201 (b), but only if the proceeds of any future judgment or settlement in the Indian action "could be assigned or transferred" by IITL (*see ABKCO*, 39 NY2d at 674 [because the debtor could assign its right to be paid future film profits by the garnishee, that right was reachable as "property" in the garnishee's possession under CPLR 5201 (b)]; *Alliance Bond Fund, Inc. v Grupo Mexicano De Desarrollo, S.A.*, 190 F3d 16, 24 [2d Cir 1999] [if property is "neither assignable nor transferrable," it is "not . . . made subject to enforcement by (CPLR) 5201 (b)"]).

Because the potential proceeds of the Indian action could be levied upon only as property, not debt, this proceeding should have been brought under CPLR 5225 (b), rather than CPLR 5227, the statute invoked by Chase's petition. However, this does not affect the outcome of the appeal, since, as previously noted, there is no substantial difference between the procedures provided by CPLR 5225 (b) and CPLR 5227, and the error, being one of form, may be deemed corrected pursuant to CPLR 103 (c) (*see City of New York v Midmanhattan Realty Corp.*, 119 Misc 2d 968, 969 [Sup Ct, NY County 1983]; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5225:5, at 266, CPLR C5227:3, at 305; 11 Weinstein-Korn-Miller, NY Civ Prac ¶¶ 5225.12, 5227.00 [2d ed]).

As noted above, one of Motorola's arguments on appeal is that, under Indian law, its potential liability to IITL as a result of the Indian action is not assignable or transferrable, given the pendency of IITL's winding-up proceeding and the January 2003 order entered therein prohibiting the creation of new "encumbrances" of IITL's assets. In response, Chase denies that it sought, or that Supreme Court granted, garnishment of IITL's "cause of action" against Motorola (*see* n 4, *supra* at 302), implying that the requirement of assignability or transferability does not apply to a debt *not* consisting of a cause of action. Although it is true that the requirement of assignability is

expressly set forth in CPLR 5201 (a) only with regard to debts "consist[ing] of a cause of action," it is far from clear that Chase is correct in suggesting that this means that the assignability requirement does not apply to other kinds of debt.[5] However, even if Chase were correct on this point, Motorola's potential liability to IITL is garnishable, if at all, only as "property" under CPLR 5201 (b), as discussed above. As CPLR 5201 (b) expressly provides, "property" must be capable of being "assigned or transferred" to be available for enforcement of a judgment.[6]

Chase also argues that we should not consider the assignability issue because Motorola did not raise it in its initial opposition to the petition. IITL, however, seems to have obliquely raised the assignability issue in its papers opposing the petition. Thereafter, Motorola submitted its attorney's "supplemental" affidavit, which brought to Supreme Court's attention the pendency of IITL's winding-up proceeding in India, the January 2003 order entered in that proceeding restraining IITL from creating new encumbrances of its assets, and the Indian statutes (Companies Act § 536 [2]; § 537 [1] [a]) that apparently render void any disposition of, or execution against, the assets of a company being wound up (such as IITL), unless the court presiding over the winding up orders otherwise.

On their face, the above-referenced Indian legal materials appear to mean that the possible future proceeds of IITL's action against Motorola are not, under Indian law, assignable or transferable by IITL, an Indian company undergoing bankruptcy proceedings in that country. If this is the case, the possible future proceeds of the Indian action do not constitute "property" available for enforcement of Chase's default judgment under CPLR 5201 (b), and the denial of Chase's petition for that reason would have been appropriate. For two reasons, however, we do not rely on the assignability issue in resolving this appeal. First, the "supplemental" affidavit by Motorola's

---

**5.** As stated in one frequently cited treatise: "CPLR 5201 (b)'s provision for enforcement against 'property' of the debtor establishes the general conceptual coverage of Article 52, while, under the more recent cases, CPLR 5201 (a) has become primarily a special case provision, with *'debts' viewed as a species of property*" (11 Weinstein-Korn-Miller, NY Civ Prac ¶ 5201.04, at 52-11 [2d ed] [emphasis added]).

**6.** Chase also asserts, in conclusory fashion and without support: "Obviously, there can be no dispute that the debt Chase actually sought to garnish— consisting solely of money [allegedly] owed by Motorola to [IITL]—is transferable and assignable." The accuracy of this contention is not obvious to us, given the material in the record concerning the restrictions of Indian law on IITL's ability to transfer its assets.

attorney, which concerned matters that could have been addressed in Motorola's initial opposition to the petition, was, in effect, an unauthorized surreply, dated only one day before the court heard oral argument and rendered its decision. More fundamentally, the ''supplemental'' affidavit was not accompanied by the opinion of an expert on Indian law regarding the effect of the attached Indian statutes and January 2003 court order. Given our lack of expertise in Indian law, we prefer not to interpret these Indian legal materials without guidance from an expert on the legal system of India (see *Jann v Cassidy*, 265 AD2d 873, 874 [1999] [the interpretation of a foreign judgment required expert proof on foreign law]).[7]

Accordingly, we proceed to consider whether Chase's petition for garnishment should have been denied (or granted in a different form) on the ground that the requested garnishment subjects Motorola to an unacceptable risk of double liability. That a risk of double liability arises from the garnishment at issue is established by the opinion of Motorola's Indian law expert, Justice Bharucha, which was not rebutted by Chase. Again, the thrust of Justice Bharucha's opinion is that the Indian courts will not recognize Chase's Delaware default judgment against IITL and, therefore, will not recognize any garnishment of the proceeds of IITL's Indian action that may be imposed by the courts of New York to enforce the default judgment. Thus, according to the uncontroverted evidence of Indian law in the record, the Indian courts will not deem Motorola's liability to IITL, if any, to be reduced by Motorola's payment to Chase pursuant to a garnishment rendered in this proceeding. Further, the risk of double liability is real, not merely theoretical, in that IITL is actively suing Motorola in India to recover the same alleged liability that Chase seeks to garnish in this proceeding; indeed, without the Indian action, Chase would have no basis for commencing this proceeding.[8]

---

**7.** The gap left in the record by Motorola's failure to submit an opinion of an Indian law expert on the assignability issue seems to have been filled by the expert opinion IITL submitted in connection with the settlement of the judgment. Chase, however, objects that it was procedurally improper to submit such material in postdecision proceedings to settle a judgment. Since we are deciding the appeal in Motorola's favor on other grounds, we need not resolve this issue.

**8.** Chase, having failed to submit any expert opinion on Indian law to rebut the opinion submitted by Motorola, asserts in its appellate brief that the opinion of Motorola's expert "in no way establishes that the Indian court . . . will subject Motorola to double liability" because Motorola's expert, in Chase's

Chase does not dispute that it would be an injustice for Motorola to be required to pay the same liability twice. As the United States Supreme Court stated more than a century ago, "[i]t ought to be and it is the object of courts to prevent the payment of any debt twice over" (*Harris v Balk*, 198 US 215, 226 [1905], quoted in *Oppenheimer v Dresdner Bank A. G.*, 50 AD2d 434, 441 [1975], *affd* 41 NY2d 949 [1977]; *see also Embree v Hanna*, 5 Johns 101, 102 [1809, Kent, Ch. J.] ["Nothing can be more clearly just, than that a person who has been compelled, by a competent jurisdiction, to pay a debt once, should not be compelled to pay it over again"]). The policy to protect garnishees from double liability is given statutory expression in CPLR 5209, entitled "Discharge of garnishee's obligation," which provides:

> "A person who, pursuant to an execution or order, pays or delivers, to the judgment creditor or a sheriff or receiver, money or other personal property in which a judgment debtor has or will have an interest, or so pays a debt he owes the judgment debtor, is discharged from his obligation to the judgment debtor to the extent of the payment or delivery."

The policy against imposing double liability on a garnishee is strong enough to be employed beyond situations where CPLR 5209 (or CPLR 6204, its analogue for orders of attachment) is directly applicable. For example, in *Oppenheimer v Dresdner Bank A. G.* (50 AD2d 434 [1975], *supra*), the Second Department gave effect to a party's compliance with a German court's order of attachment, just as if the order had been issued by a New York court, in order to avoid requiring the party to pay a debt twice. The *Oppenheimer* court, considering the converse of the issue presented here, held that the defendant bank's debt to the plaintiff under a promissory note would be reduced by the amount the bank, as garnishee, had paid in Germany pursuant to a German court's order attaching the bank's debt under the promissory note to collect a liability of the note's maker. To require the bank to pay the debt a second time, the court stated,

---

view, "ignores the possibility that *despite* a conflict between New York garnishment law and Indian law, the Indian court will *nevertheless* accord deference to New York's garnishment law." To the contrary, Motorola's expert opined that the Indian court will refuse to give effect to any garnishment entered herein, even if the result is the imposition of double liability on Motorola. Without the support of the opinion of any expert on Indian law, Chase's argument fails to raise a question as to the accuracy of the legal opinion of Motorola's expert.

would be "an unconscionable result" (*id.* at 441; *see also Embree v Hanna*, 5 Johns 101 [1809], *supra* [suit to recover a debt dismissed on the ground that the debt had been attached in another state by the plaintiff's creditors]).[9]

It is true that, under CPLR 5209, Motorola's liability to IITL, if any, will—as a matter of New York law—be reduced to the extent of any payment Motorola makes to Chase pursuant to the judgment of garnishment rendered in this proceeding. By virtue of the Full Faith and Credit Clause of the United States Constitution, the courts of other states will be required to recognize such a reduction of Motorola's liability to IITL, should IITL ever proceed on its claim against Motorola in the United States (*see Harris v Balk*, 198 US 215 [1905], *supra*; *Oppenheimer*, 50 AD2d at 440; Siegel, NY Prac § 515 [4th ed]; 11 Weinstein-Korn-Miller, NY Civ Prac ¶ 5209.04 [2d ed]). However, IITL is suing Motorola in India, beyond the protection of the Full Faith and Credit Clause, and, as previously discussed, the record evidence indicates that the Indian courts will not give the judgment appealed from the effect to which it is entitled under New York law.

Chase argues that, so long as a judgment creditor has established grounds for a garnishment under article 52, the courts have no power to deny the use of that enforcement device in order to avoid subjecting the garnishee to the risk of double liability. This contention overlooks CPLR 5240, which provides in pertinent part: "The court may at any time, on its own initiative or the motion of any interested person, . . . make an order *denying, limiting, conditioning*, regulating, extending or modifying *the use of any enforcement procedure*" (emphasis added). As the Court of Appeals has stated, this statute "grants the courts broad discretionary power to control and regulate the enforcement of a money judgment under article 52 to prevent 'unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts'" (*Guardian Loan Co. v Early*, 47 NY2d 515, 519 [1979], quoting 3d Preliminary Rep of Advisory Comm on Prac and Pro, at 314 [1959]).

---

**9.** As Chase points out, the *Oppenheimer* court was in a position analogous to that of the Indian court presiding over IITL's action against Motorola. Thus, the *Oppenheimer* court did not do (and was not asked to do) what Motorola asks us to do here, namely, deny a garnishment petition seeking to enforce a domestic judgment against a foreign judgment debtor. While it is true that *Oppenheimer* does not constitute direct authority for denying Chase's garnishment petition, the case does reflect New York's strong disfavor for reaching a result that exposes a garnishee to double liability.

Chase cites no authority supporting the view that it is beyond a court's "broad discretionary power" (*Guardian Loan*, 47 NY2d at 519) under CPLR 5240 to deny a judgment creditor an otherwise proper garnishment to protect the garnishee from a substantial risk of double liability. The question, therefore, is whether the risk of double liability arising here warrants exercising the judicial power to deny or condition the use of an otherwise appropriate enforcement procedure to prevent "prejudice to any person" (*id.*). We think it does.

There appears to be relatively little reported case law of recent vintage addressing the effect of a threat of double liability in a foreign country on the propriety of entering an order or judgment of garnishment.[10] In the absence of controlling New York authority, Motorola urges us to follow the highest courts of Arizona and Connecticut, which held (in 1924 and 1930, respectively) that a petition for garnishment should be denied where the garnishee demonstrates that the forum's grant of such relief to the judgment creditor will likely result in the garnishee's incurring double liability in a foreign country, whose courts will not recognize the forum's garnishment and will not credit the garnishee for any payment made pursuant thereto (*see Parker, Peebles & Knox v National Fire Ins. Co. of Hartford*, 111 Conn 383, 396, 150 A 313, 317-318 [1930] [denying garnishment where the "record shows conclusively that the obligation of this garnishee to pay the debt in full in Haiti was an absolute one and that the courts of that jurisdiction would not recognize or give credit for any payment made here by the garnishee by compulsion of our courts"]; *Weitzel v Weitzel*, 27 Ariz 117, 125, 230 P 1106, 1108 [1924] [in affirming the dismissal of a writ of garnishment against a garnishee that owed wages to the judgment debtor for work performed in Mexico, the court noted that the garnishee "ought not to be compelled to pay such debt to an Arizona creditor (of the judgment debtor) when it is not only possible but probable (that the garnishee) would have to pay (the debt) again" in Mexico]; *accord LNC Invs., Inc. v Republic of Nicaragua*, 2002 WL 32818644 [D Del, Dec. 18, 2002], *appeal dismissed* 396 F3d 342 [3d Cir 2005] [quashing a writ of attachment seeking to garnish a debt the garnishee owed the judg-

---

**10.** A discussion of American and English case law of the nineteenth and early twentieth centuries addressing this issue is found in Annotation, *Refusal to Render Judgment of Garnishment in Proceedings in Rem, Because of Danger to Garnishee of Double Liability in Event of Refusal of Court of Another Jurisdiction to Recognize or Give Effect to Judgment, if Rendered* (69 ALR 609 [1930]), which apparently was last supplemented in 1937.

ment debtor, the Nicaraguan government, in view of the risk of double liability the garnishee would face in Nicaragua]).

Chase argues that New York law is contrary to the *Parker, Peebles & Knox* and *Weitzel* holdings. Chase first relies on *Bank of Buffalo v Vesterfelt* (36 Misc 2d 381 [Erie County Ct 1962]), in which the court denied a motion to vacate an order garnishing wages a Canadian corporation owed the Canadian judgment debtor for work he performed in Canada. The *Bank of Buffalo* judgment debtor, who had commenced voluntary bankruptcy proceedings in Canada, argued in support of the motion that garnishing his wages would expose his employer to possible double liability, since Canadian law provided that "all assets of the bankrupt vest in the bankruptcy trustee including all wages and accruing wages of the bankrupt, if the said bankruptcy trustee makes claim for them" (*id.* at 383-384). In denying the motion—which, notably, was made by the judgment debtor, not by the garnishee supposedly threatened by double liability—the court stated (*id.* at 385):

"In the instant case the Canadian Bankruptcy Act entitles the trustee to the wages of [the judgment debtor] only if he makes claim for them.

"The double liability of the garnishee in this case is at most remote and it should not be permitted to stand in the way of plaintiff's rights under the existing law."

Of course, *Bank of Buffalo* is not binding on us. In any event, we disagree with Chase's assertion that *Bank of Buffalo* "holds that double liability is no defense" to a petition for garnishment. The decision indicates that the risk of double liability was only a theoretical possibility, since the trustee apparently had not asserted a claim for the garnished wages in the Canadian bankruptcy proceeding. That the motion to vacate the garnishment was made by the judgment debtor, not by the garnishee potentially exposed to the risk of double liability, underscored the "remote" nature of that risk. Here, by contrast, the risk of double liability to which the garnishment exposes Motorola is real, as IITL is suing Motorola in India to recover the same alleged liability that Chase seeks to garnish in this proceeding. As previously discussed, Motorola has established that the Indian courts will not recognize any garnishment of that liability, and will not credit Motorola for a payment to Chase made pursuant to such a garnishment.

Chase also relies on four decisions holding that, where a bank is sued on a claim of title to the funds in a bank account, the

possibility that the bank may subsequently be required to satisfy a conflicting claim to the same account by a party that could not be joined in the action does not constitute a defense to the plaintiff's claim. The most prominent of the four decisions cited in this regard is *Petrogradsky Mejdunarodny Kommerchesky Bank v National City Bank of N.Y.* (253 NY 23 [1930], *cert denied* 282 US 878 [1930]), in which Chief Judge Cardozo wrote: "The possibility of adverse claims does not relieve the defendant [bank] from liability when sued in an action at law by a depositor who is successful in proving a title to the fund" (253 NY at 38). In *Petrogradsky*, the directors of a pre-Revolution Russian bank, the assets of which had been seized by the Soviet government, were suing to recover funds the Russian bank had deposited with the defendant New York bank prior to the overthrow of the czar. The New York bank argued that, if it paid the funds to the directors, it would be exposed to double liability, since the Soviet government could also demand the funds and, if it did so, might enforce the demand against the bank's foreign operations. In holding that this risk of double liability, even if real, did not afford the bank a defense against the directors' claim, the Court of Appeals stated: "Whatever risk [the bank] runs abroad[ ] is one that it assumed as part of the business of a bank. 'The chance of double payment is a common risk of life' " (*id.* at 40, quoting *Coler v Corn Exch. Bank*, 250 NY 136, 145 [1928], *affd* 280 US 218 [1930]).[11]

While the *Petrogradsky* line of cases demonstrates that, in certain contexts, double liability may be considered "a common risk of life" (253 NY at 40), we are unable to take such a benign view of double liability in the context presented by this appeal. In *Petrogradsky*, *Coler*, *Commercial Bank* and *Steingut*, the party exposed to the risk of double liability was a bank, engaged

---

11. The remaining three cases Chase cites on this point are to similar effect. In *Coler v Corn Exch. Bank* (250 NY 136 [1928], *supra*), the Court of Appeals held, in an action by a public officer to seize the bank account of an absconded head of household pursuant to the former Code of Criminal Procedure, that the defendant bank could not assert as a defense the possibility that the absconded depositor might later return to New York, disprove the jurisdictional basis for the seizure, and demand from the bank the funds previously surrendered to the government. In each of the other two cases, *United States v Commercial Bank of N. Am.* (31 FRD 133 [SD NY 1962]) and *Steingut v National City Bank of N.Y.* (38 F Supp 451 [SD NY 1941]), it was held that the defendant bank would have to abide the risk of double liability resulting from its inability, due to the sovereign immunity of the United States, to join in one action all parties having claims to the funds in the subject bank account.

in the business of holding deposits on account for its customers, and faced with an actual or potential dispute over title to such an account. As the Court of Appeals suggested in *Petrogradksy*, the risk of double liability arising from such a dispute is "assumed *as part of the business of a bank*" (253 NY at 40 [emphasis added]), and, we might add, that risk is a foreseeable one that banks presumably consider in setting the fees charged to account holders. Here, by contrast, Motorola, the party facing the risk of double liability, is *not* engaged in banking or any other business in which financial deposits are held on account for customers. Further, Chase, the party asking us to expose Motorola to the risk of double liability, seeks to garnish an asset to which Chase (unlike the plaintiffs in the *Petrogradsky* line of cases) asserts no claim in its own right, but only a derivative claim as judgment creditor of an absent third party. In this situation—an article 52 garnishment proceeding in which the asset sought to be garnished is not an account at a bank or other financial institution—a result that exposes the garnishee to a substantial risk of double liability cannot be viewed with equanimity.[12]

Chase contends that, even if we have the power to deny an otherwise proper garnishment to protect the garnishee from double liability, there is no equitable reason to do so here:

> "[I]t is not at all intuitive that it is somehow more unconscionable to make Motorola pay twice than to deny Chase any recovery at all [on its judgment against IITL]. In either case, the harm to the aggrieved party is the same—the loss of $14 million [the approximate amount of Chase's judgment against IITL, with interest, at the time this proceeding was commenced]."

Given that this loss evidently must be suffered by one or the other of the two parties to this proceeding, Chase asks why "[it], rather than Motorola, should be forced to bear the cost of any parochial and wrongheaded refusal by the Indian court to respect Motorola's rights under New York law." In this regard, Chase points out that "Motorola does extensive business in

---

**12.** We reject Chase's argument that denying its garnishment petition due to the risk of double liability improperly accords comity to the anticipated decision of the Indian court. The petition is being denied, not out of respectful deference to a foreign country's law or judicial system, but to protect a garnishee from being required to pay the same debt twice, a result that would violate this State's own policy.

India," from which Chase concludes that "it should not be regarded as in any way unjust that Motorola would be subjected to the vagaries of the Indian judicial system."

We are not persuaded by Chase's attempt to turn the equitable tables against Motorola. It was Chase, not Motorola, that accepted as loan collateral the payment obligation of IITL, an Indian company without assets in the United States. Before closing the loan, Chase had an opportunity to assess the collection risks of such collateral and to charge fees and interest that would compensate it for assuming those risks. Now that the loan has gone into default and Chase's efforts to collect the collateral from IITL have failed, this garnishment proceeding represents an effort by Chase to shift its collection risks to Motorola, a third party that never agreed to assume such risks and has not been compensated for doing so. To be clear, while Motorola assumed the risks of its own dealings with IITL (which risks have in part come to fruition in the pending Indian action), Motorola did not assume the risks of other parties' dealings with IITL. Thus, contrary to Chase's denials, it will realize a "windfall" if we sustain a garnishment that, given the demonstrated state of Indian law, will force Motorola to bear the cost of Chase's inability to collect its collateral from IITL. The avoidance of this injustice constitutes sufficient reason to exercise our power under CPLR 5240 to deny a garnishment, even assuming that the garnishment would otherwise be proper under article 52.

It remains to consider whether, to prevent Motorola from being subjected to double liability, we should deny the petition outright and dismiss the proceeding or, alternatively, modify the judgment to condition Motorola's obligation to pay Chase on events indicating that the risk of double liability has dissipated.[13] We conclude that the petition should be denied and the proceeding dismissed. The uncontroverted opinion of Motorola's expert on Indian law indicates, in no uncertain terms, that the Indian courts will not give effect to any garnishment issued in this proceeding because Indian law precludes recognition of the

---

**13.** As Motorola correctly points out, the judgment appealed from, as written, affords Motorola no protection from double liability. The condition the judgment places on the directive that IITL agree to credit Motorola for its payment to Chase—that such an agreement not be "determined to be void by the India Court"—merely protects IITL from running afoul of Indian law. In the event the Indian court determines that the contemplated agreement would be void, Motorola's obligation to pay Chase will be unaffected under the judgment's terms.

default judgment that would be enforced by such a garnishment. Since Chase apparently was unable to obtain an expert opinion to the contrary, granting the petition on a conditional basis would merely delay the inevitable denial of relief while causing the parties to incur additional litigation costs here and in India. The existing judgment's conditional directive to IITL suffers from the same defect. Given the evidence of Indian law in the record, there is no reason to believe that the Indian court would approve of IITL's compliance with the mandate of a New York judgment that is not itself entitled to recognition under Indian law.[14]

Since we are denying the petition based on the risk of double liability, we need not decide whether, as argued by Motorola, the garnishment of the potential proceeds of the Indian action was a "premature[ ] exercis[e of] jurisdiction over a judgment that has not yet issued from a foreign court." We note, however, that there is authority apparently supporting the view that the proceeds of the judgment of a court of another state, even if that judgment has not been domesticated in New York, may be attached or levied in New York by a creditor of the judgment creditor if the debtor on the sister-state judgment is subject to process here (see *Shipman Coal Co. v Delaware & Hudson Co.,* 219 App Div 312 [1927], *affd* 245 NY 567 [1927]; *Breezevale Ltd. v Dickinson,* 262 AD2d 248 [1999]; *see also Huron Holding Corp. v Lincoln Mine Operating Co.,* 312 US 183 [1941] [according full faith and credit to a New York levy upon the debt arising from the judgment of an Idaho federal court]).[15] The judgment appealed from, by garnishing the potential proceeds of a judgment that a court of a foreign country may or may not render in the future, went beyond the holdings of the above-cited cases, and essentially predetermined that any future judgment against Motorola that may issue in the Indian action will be entitled to recognition in New York. Whether it was appropriate, apart from the ensuing risk of double liability, to enter such a judgment of garnishment is a question that may be left for another day.

---

**14.** It is not clear that the judgment's directive to IITL, a bankrupt Indian company without United States assets, could be enforced in any event. Nor is there any indication that IITL (which has not made any submission on this appeal) would voluntarily comply with the judgment's directive.

**15.** *But see Beers v Shannon,* 73 NY 292, 299 (1878) ("locality is given [to judgments] by the *situs* of the court where they are entered, and not of the abode of the debtor"), cited in *Byblos Bank Europe, S.A. v Sekerbank Turk Anonym Syrketi,* 12 Misc 3d 792, 794-795 (2006), *mod* 40 AD3d 497 (2007), *lv granted* 9 NY3d 805 (2007), *lv dismissed* 9 NY3d 885 (2007).

Accordingly, the judgment of Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered October 11, 2005, which granted Chase's garnishment petition, should be reversed, on the law and the facts, with costs, the petition denied, and the proceeding dismissed.

MAZZARELLI, J.P., WILLIAMS and McGUIRE, JJ., concur.

Judgment, Supreme Court, New York County, entered October 11, 2005, reversed, on the law and the facts, the petition denied, and the proceeding dismissed.